**Willie CAPLER, Plaintiff,**

v.

**CITY OF GREENVILLE, MISSISSIPPI, and W. C. Burnley, Jr., Chief of Police, City of Greenville, Mississippi, Defendants.**

**No. GC 6827.**

United States District Court
N. D. Mississippi,
Greenville Division.
March 31, 1969.

James L. Robertson, Campbell, De-Long, Keady & Robertson, Greenville, Miss., for plaintiff.

Nathan P. Adams, Jr., Greenville, Miss., for defendants.

## OPINION

ORMA R. SMITH, District Judge.

The case sub judice was begun in the Police Court, City of Greenville, Missis-sippi, on June 27, 1966. Charges were brought against the petitioner, Willie Capler, for driving while intoxicated on June 25, 1966. The petitioner plead not guilty but was found guilty by the Court and fined $100.00 plus cost. The case was appealed to the County Court of Washington County, Mississippi, and was tried de novo before a jury; the jury returned a verdict of guilty as charged. A transcript was made of the proceedings before the County Court. The petitioner made a motion for an acquittal notwithstanding the verdict alleging among other grounds, that he was denied due process of law and was denied the right to counsel. The motion was overruled.

The petitioner appealed the case to the Circuit Court of Washington County, Mississippi, alleging the same constitutional grounds, and the judgment of the lower court was affirmed. On the basis of the constitutional question, the case was appealed to the Supreme Court of Mississippi. The Supreme Court of Mississippi affirmed the lower court and the opinion is reported at 207 So.2d 339 (1968). The petitioner then filed a suggestion of error with the Supreme Court of Mississippi and the suggestion of error was denied. Subsequently the petitioner sought certiorari with the Supreme Court of the United States and the writ of certiorari was denied.

Following the denial of the writ of certiorari the petitioner filed a complaint in this Court on a writ of habeas corpus. The parties have stipulated to the record of the preceding courts, including the transcript of the proceedings before the County Court of Washington County, Mississippi. Nevertheless, the Court has thoroughly reviewed the transcript and is satisfied that the petitioner has received a full and complete hearing on the constitutional issues which meets the standards of Townsend v. Sain.[1] The Court has received briefs from both the petitioner and the City of Greenville.

___

1. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

The pertinent facts are thus. On the early morning of June 25, 1966, or the late evening of June 24, 1966, the petitioner, Willie Capler, was travelling west on Highway #82 within the city limits of Greenville, Mississippi. He was accompanied by one Lula Bell Murry. Capler testified that because of his unfamiliarity with the power steering of his car, which he had owned only one week, he made a bad play with his car which drew the attention of the police officer. The arresting officer, M. R. Williams, testified that he noticed Capler around 1:15 a. m., June 25, 1966, and observed him weaving back and forth on the road, and at one time almost hitting the curb of the right side of the road.

Williams stopped Capler, placed him under arrest, and called another police officer, George Darrell Martin, to drive Capler's car to the police station. Lula Bell Murry was not arrested and was left at the scene of the arrest. Williams testified that it took approximately ten minutes to reach the police station.

After Capler was taken to the police station he was booked at 1:35 a. m., June 25, 1966, and was placed in a cell used for intoxicated persons. He was not administered a blood test or other scientific test to determine intoxication. But Williams testified that Capler had a strong odor of alcohol on his breath, talked in a thick tongued manner and staggered when he walked. Two other officers testified to the same effect.

Lula Bell Murry testified that Capler picked her up around 9:30 or 10:00 p. m., June 24, 1966, and that they were stopped within five minutes after they left her house. She testified that Capler was not drinking when he came by for her and that he did not act as though he had been drinking. She further testified that Capler has possessed the car for approximately two or three months and that she did not notice him having any trouble driving the car.

Capler testified that he had one beer at approximately 4:30 p. m., June 24, 1966, but that he did no further drinking the remainder of the evening. He testified that the arresting officer hit and kicked him just after they arrived at the police station. He further testified that he asked the officer for a doctor at the police station but that he did not ask for an attorney. He admitted that he had been convicted of drunkenness before, and also assault and battery and carrying a concealed weapon.

Williams and other officers denied that Capler asked for a doctor. Williams stated that Capler walked from the police car to the police station of his own accord, but that it was necessary to get Martin to help place the petitioner in the cell. Williams testified that Capler sat down in the elevator, which was used to proceed from the first floor of the police station to the second, and refused to get off. He was placed in a cell for intoxicated persons and was taken from that cell around 8:00 a. m., June 25, 1966, and placed in another cell. Around 10:00 or 11:00 a. m., June 25, 1966, he asked to call an attorney and was granted permission.

At the trial Capler's mother and his two daughters testified that prior to his arrest, on the evening of June 24, 1966, at 7:30 p. m., the petitioner had taken them to church. He was supposed to come back and carry them home from church around 9:30 or 10:00 p. m. His mother and both daughters testified that he had not been drinking before he carried them to church. His mother also testified that the petitioner had carried her to church in that same car on several different occasions.

A few comments are necessary to set forth the course that this Court will follow. The petitioner has been very ably represented by counsel in every judicial proceeding. The petitioner's allegation of denial of counsel only applies to the failure of the police officers to inform him of his right to counsel on arrest and on incarceration (a period of approximately ten hours). Counsel for petitioner in a very thorough, able and ingenious brief has extensively covered

298

the issues and the relief which this Court might grant. The Court intends to go straight to the heart of the cause and deal with the issues of due process and denial of counsel.

The due process issue and the denial of counsel issue are interwoven and closely related. With regard to due process the petitioner asserts two grounds: (1) that the law enforcement officers failed to give him a reasonable means of preserving evidence of his condition at the time of his arrest and incarceration, and that the officers were under an affirmative duty to give the accused such an opportunity, (2) that the policy of the police department of mandatory incommunicado incarceration for six hours of persons arrested for intoxication violated the petitioner's constitutional rights to due process.

■ The due process standard has changed through the years; it is a standard that defies exact, concrete definition, but it has remained one of the cherished bulwarks of our democracy. In Betts v. Brady[2] the Supreme Court approached the concept by prohibiting the conviction and incarceration of one whose trial was offensive to the common and fundamental ideas of fairness and right. The Supreme Court later overruled Betts v. Brady as it applied to the denial of counsel but retained the idea of due process requiring those rights which are fundamental and essential to a fair trial.[3] In effect the Court held that the guarantee of counsel was one of those fundamental rights. In Townsend v. Sain the Supreme Court held that state prisoners were entitled to relief on federal habeas corpus only upon proving that the detention violates the fundamental liberties of a person safeguarded against the state by the federal constitution.[4]

■ Procedural due process has been characterized as directed toward two objectives. One is insuring the integrity and reliability of the guilt determining process. The other is respecting the notion of man's dignity, which may be denigrated either by procedures that fail to respect his intrinsic privacy or that entail the imposition of shocking brutality. The word "fairness" has been interpreted as demanding: that the accused be put on fair notice of the nature of the prohibitive acts; that he be given an adequate opportunity to present his side through counsel before a fair and impartial tribunal free from prejudicial influences; that he be entitled to be continuously present at the trial; that he be entitled to confront and cross-examine his accusers; that he have the right to be free of the damaging and untrustworthy influence of coerced confessions and testimony knowingly perjured.[5]

■ The Court does not feel that the due process standard is as broad as asserted by counsel for the petitioner, but assuming ad argumentum that the standard requires officers to take affirmative steps to allow an accused a reasonable means of preserving evidence, the Court will examine the evidence and the proceedings to determine if those rights which are fundamental and essential to a fair trial have been protected. The petitioner was not given a blood test or other scientific tests, but such tests were not available to the Greenville Police Department. Yet three officers testified to facts which would prove that the petitioner was intoxicated. The cases are legion that a Federal Court will not weigh the evidence of a State Court conviction to determine sufficiency but will only examine the evidence to see if the conviction is so totally devoid of evidentiary support as to render

2. Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942).

3. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733 (1963).

4. Townsend v. Sain, 372 U.S. at 312, 83 S.Ct. 745, 9 L.Ed.2d 770.

5. Kadish, Methodology and Criteria in Due Process Adjudication—A Survey and Criticism, 66 Yale L.J. 319 (1957).

it unconstitutional under the due process clause of the Fourteenth Amendment.[6] Clearly this case does have the evidentiary support necessary for the due process clause.

The next question is whether the petitioner was given the opportunity of a meaningful confrontation of the charge —through the processes of the Court and through his own evidence. The petitioner took the witness stand and testified in his own behalf. He had the testimony of Lula Bell Murry, a third party who was with him at the time of the arrest, and he had the testimony of his mother and his two daughters who were with him a few hours prior to his arrest. Finally, he had the character testimony of E. H. Hall, who was his employer. Hence he had substantial evidence with which he rebutted and confronted the charge against him.

The record indicates that the petitioner plead not guilty to the charge before the Police Court and before the County Court. He was tried de novo before a jury in the County Court and was well represented by counsel. The County Court gave the petitioner every opportunity to express and protect his constitutional rights. In MacKenna v. Ellis [7] the Fifth Circuit set forth certain standards which the due process clause requires:

"* * * it is basic to due process that an accused person have a fair opportunity to tell his story in a fair trial. He is entitled to such notice of trial that he will be able to present his witnesses in court on the day of the trial. He is entitled to the effective, wholehearted assistance of counsel and to the undivided loyalty of counsel. Finally, he is entitled to have his trial guided by a judge sensitive to the duty of protecting the accused's

constitutional rights in all cases, * * *." [8]

After a thorough examination of the record the Court is satisfied that the petitioner not only received these safeguards, but that he received them in abundance.

As to the policy of the incommunicado incarceration of intoxicated persons, the petitioner has failed to establish any relation to this case. The petitioner, at the time of his arrest, by his own admission, did not ask for an attorney. Later when he requested an attorney he was granted permission to call one. He testified that he requested a doctor, but the officers testified that this was not true. The jury observed the demeanor of all parties and believed the officers. If the petitioner had in fact requested an attorney the results might be different. Yet the Court cannot perform a legislative function and strike down a policy of a police department that has no bearing on a case before the Court.

The right to counsel has been the main issue of many cases in recent years. The Supreme Court has taken great strides in this area. In Gideon v. Wainwright [9] the Supreme Court held that the right to counsel is one of the safeguards which is protected against state invasion by the Fourteenth Amendment. Yet the *Gideon* decision in no way solved the problem. The Courts have had great difficulty in deciding in what cases, and at what stage of a case, the right to counsel accrues. In Hamilton v. Alabama [10] the Supreme Court held that arraignment in an Alabama Court is a "critical stage" which demands the presence of counsel so that the accused can know all of the defenses available in order to plead intelligently. In Miranda

6. Garner v. Louisiana, 368 U.S. 157, 82 S.Ct. 248, 7 L.Ed.2d 207 (1961).

7. MacKenna v. Ellis, 280 F.2d 592 (5 Cir. 1960).

8. MacKenna v. Ellis, 280 F.2d at 595.

9. Gideon, see Note 3.

10. Hamilton v. Alabama, 368 U.S. 52, 82 S. Ct. 157, 7 L.Ed.2d 114 (1961).

v. Arizona [11] the Supreme Court pondered the privilege of self incrimination as it relates to police interrogation. The Court held that an accused must be informed of his right to remain silent and his right to counsel before he may be subjected to questioning by the state.

The "critical stage" classification was used again in United States v. Wade,[12] and the Supreme Court held that the presence of counsel is necessary in a line-up identification. Yet the Court stated that other preparatory steps such as scientific analyzing of the accused fingerprints, blood sample, clothing, hair and the like were not critical stages since there was a minimal risk that counsel's absence at such stage might derogate from the right to a fair trial. The Court was concerned with the grave potential for prejudice, intentional or not, in the line-up identification and the fact that presence of counsel could avert such prejudice and assure a meaningful confrontation at trial.

The Supreme Court has not specifically stated that the right to counsel applies to misdemeanor cases.[13] Yet the Fifth Circuit has specifically stated that the right to counsel does apply to misdemeanors, but the stage at which the right to counsel applies is not free from doubt.[14] In the *Harvey* case, the *McDonald* case, and the *Goslin* case the accused had entered a plea of guilty without the benefit of counsel. As stated in the *Harvey* case the accused had the right to assistance of counsel before entering a plea of guilty "because of the disadvantageous position of an unassisted layman in a court of law and because of the serious consequences which may attend the guilty plea." [15]

In the case at bar the petitioner was without counsel from approximately 1:35 a. m., June 25, 1966, until approximately 11:00 a. m., June 25, 1966, when he asked to call an attorney, and was granted permission. During that period of time he was not questioned and made no incriminating statement or action of any kind. Under the circumstances this Court does not feel that the period was a critical stage which required the presence of an attorney. Once the petitioner was arrested and incarcerated, the investigative procedures were terminated. The petitioner did not plead guilty but rather entered a plea of not guilty and had the opportunity to call in third parties to confront the allegations of the police officers. Neither the Supreme Court nor the Fifth Circuit Court of Appeals have held that each police station must have a "station house lawyer" present at all times to advise prisoners.[16]

Thus the Court holds, that under the circumstances of this case, the failure to advise the petitioner of his right to counsel on arrest and incarceration was de minimus and did not constitute a denial of counsel under the Sixth Amendment.

11. Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966).

12. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

13. In the Matter of Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), the Supreme Court held that the right to counsel applied in juvenile delinquency proceedings which may lead to commitment in a state institution. Judge Keady followed this decision in this district in Phillips et al. v. Cole et al., 298 F.Supp. 1049.

14. Harvey v. State of Mississippi, 340 F. 2d 263 (5 Cir. 1965); McDonald v. Moore, 353 F.2d 106 (5 Cir. 1965); Goslin v. Thomas, 400 F.2d 594 (5 Cir. 1968).

15. Harvey, 340 F.2d at 269.

16. Miranda v. Arizona, 384 U.S. at 474, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974.