**Charles T. SCARBOROUGH, Petitioner,**

v.

**J. C. KELLUM in his capacity as Sheriff of Oktibbeha County, Mississippi, Respondent.**

**No. EC 74–3–K.**

United States District Court,
N. D. Mississippi, E. D.

Jan. 9, 1975.

Charles T. Scarborough, pro se.

Timmie Hancock, Asst. Atty. Gen., Jackson, Miss., for respondent.

## MEMORANDUM OPINION

KEADY, Chief Judge.

'Tis known by the name of perseverance in a good cause—and obstinacy in a bad one.

—Laurence Sterne

At approximately 11:30 on the night of September 26, 1970, Virgil Luke, a Mississippi highway patrolman, arrested Charles T. Scarborough, a Starkville resident, on a charge of driving an automobile while under the influence of intoxicating liquor, as Scarborough was operating his vehicle on U. S. Highway 82, in Oktibbeha County, between Starkville and Mayhew Junction. Luke carried Scarborough to the county jail, where he remained overnight, occupying a cell adjacent to William Estes, another prisoner.

Incensed by his arrest and incarceration for this traffic offense, Scarborough, a mathematics professor at Mississippi State University and the holder of a Ph.D degree, engaged counsel but was nevertheless tried and convicted in

the justice of the peace court on the drunk driving charge. From that conviction Scarborough took an appeal to the circuit court, where he was tried de novo and represented by new counsel, Honorable Billy J. Jordan of Columbus. In a jury trial, petitioner was again convicted, on substantial evidence of intoxication, fined $200 and sentenced to a jail term of 30 days, with the jail term suspended.

After two such disenchanting experiences with retained counsel, the tenacious Scarborougth chose to represent himself, without assistance of counsel, before the Supreme Court of Mississippi. In that court, Scarborough's legal position was thoroughly vindicated by a newly announced constitutional rule,[1] and he won a resounding moral victory. Unfortunately, the triumph was more Pyrrhic than real, for the state supreme court, disappointingly, applied its ruling prospectively, thus affirming Scarborough's misdemeanor conviction. Scarborough v. State, 261 So.2d 475 (Miss. 1972). His frustration now doubtless compounded, Scarborough tirelessly petitioned the Supreme Court of the United States, pro se, for a writ of certiorari. This, too, was denied. Scarborough v. Miss., 410 U.S. 946, 93 S.Ct. 1353, 35 L.Ed.2d 613 (1973). Finally, on October 8, 1973, the Supreme Court of Mississippi denied Scarborough's pro se request to file a petition for writ of error coram nobis pursuant to Miss. Code Ann. § 99–35–145 (1972).

Scarborough's available state court remedies were now utterly exhausted.

His determination to right the supposed wrongs done him was not dampened, however, and he has now petitioned this court, pro se, to correct them through its power of habeas corpus.

Pursuant to recommendations made by the United States Magistrate[2] after review of the petition, response and state court transcript, this court on November 12, 1974, conducted an evidentiary hearing highlighted by petitioner's enthusiastic, though bizarre, courtroom performance, and received evidence from the parties on the following issues:

1. Whether petitioner was held incommunicado in the county jail and thus denied potentially exculpatory evidence;

2. Whether the prosecution purposely released William Estes from jail prior to the expiration of his sentence to prohibit Estes from giving testimony favorable to petitioner as to his state of intoxication shortly after petitioner's arrest, and thereby suppressed evidence;

3. Whether petitioner was deprived of effective assistance of counsel by reason of inadequate presentation of the foregoing issues at petitioner's trial in state court.

At our hearing, petitioner's evidence, in addition to his own testimony, consisted of the testimony of his wife and Fred Eskafi, a friend. Respondent offered as witnesses patrolman Luke, deputy sheriff and jailer James Bradberry, former sheriff William Harpole, and Billy J. Jordan. In addition to consideration of this oral testimony, the court has also reviewed the state court

---

1. Finding that Scarborough was held incommunicado by the Oktibbeha County officials and denied the opportunity to secure a sobriety test, the Court held:

"We announce as a constitutional rule that holding a prisoner incommunicado and unreasonably denying or ignoring his request for assistance to have tests made amounts to a denial of due process of law by thus suppressing possible evidence favorable to the defendant, provided the defendant can show:

1. Request to have a test made at his own expense.

2. Cooperation with officers so that no reasonable apprehension of difficulty in handling the prisoner exists so the test can be made consistent with safe custody.

3. Availability of facilities and personnel to make test at time and place requested which is reasonably accessible to the place of incarceration.

4. Refusal by officers to permit prisoner to communicate with an attorney or other person of his choice in an effort to have a requested test made."

2. The magistrate's thoughtful and scholarly report is appended to this opinion as Appendix A.

transcript. The court now resolves factual disputes necessary to a determination, incorporating herein findings of fact and conclusions of law as required by Rule 52, F.R.Civ.P.[3]

## I. INCOMMUNICADO DETENTION

Immediately upon his arrest by Luke, petitioner, by his own admission a person of easily excitable nature, became highly agitated. Waving his arms about, petitioner villified the officer with a string of abusive utterances, even threatening Luke with a charge of police brutality and the loss of his job. When the patrolman persisted in making the arrest, petitioner several times demanded both before and after he was lodged at the county jail, that he be given a test—any kind of test—to determine whether he was intoxicated.

■■ Although we conclude that petitioner never specifically requested that a Blood Alcoholic Content (BAC) test be administered, since he simply had in mind any available sobriety test, it is clear that such specificity is not constitutionally required. Petitioner's repeated insistence for some objective test of his intoxication placed on the detaining officials the constitutional obligation to provide an avenue, consistent with jailhouse security requirements, by which petitioner could communicate with the outside world and thus make arrangements for the administration of a potentially exculpatory test.[4] It is a commonly known biological fact that the amount of alcohol in the bloodstream—which is determinant of intoxication and hence of an arrestee's guilt or innocence on any drunkenness charge—is soon dissipated by the body's natural processes. Thus, an objective test of sobriety, to be probative, must be administered as quickly as possible after the initial arrest. Although the Due Process Clause has not yet been read to require the state to administer such a test to an arrestee on demand, it is settled that the state must, at the least, not interfere unreasonably with the arrestee's ability to take steps on his own to preserve this evanescent proof. Capler v. City of Greenville, 298 F.Supp. 295 (N. D.Miss.1969), aff'd. 422 F.2d 299 (5 Cir. 1970).[5] Our inquiry must thus focus on whether an avenue of communication was provided to petitioner.

After he was placed in jail about midnight, petitioner demanded to be allowed to make a phone call. Instead, Luke offered to make a phone call for petitioner and to convey whatever instructions he might have, either to petitioner's wife or anyone else petitioner might direct him to call.[6] Luke's actions were in keeping with the established practice at the jail not to allow

---

3. Evidentiary hearing was conducted in this action pursuant to the mandate of 28 U.S.C. § 2254(d), the court having reluctantly concluded that the material facts were not adequately developed at the state court hearing; nor were they made known to the United States Magistrate at the time of his report. We proceed, therefore, to find the relevant facts herein de novo, without attaching to state court factfinding the presumption of correctness to which it would be otherwise entitled.

4. As the court understands it, only two objective tests are commonly accepted as reliable indicators of sobriety. These are the blood test, or Blood Alcoholic Content test, and the Intoximeter, or deep lung breath test. Other time-honored methods, such as walking a straight line, touching the tip of the nose with the index finger, or hopping on one foot, while amusing, are of dubious probative value.

5. Petitioner's conviction occurred before the adoption of Mississippi's Implied Consent Law, Miss.Code Ann. § 63–11–1 et seq. (1972), which became effective April 1, 1972. Hence, the requirements of that Act do not here apply.

6. At evidentiary hearing petitioner was reminded, to his mortification, that Luke's offer included the relay of information concerning a blood test:

Q. [Scarborough] You are saying, then, that if I had asked you to call my wife and asked you to instruct my wife that I wanted a doctor to come down for a blood test, you would not have conveyed this thought to her, this idea to her?

A. [Officer Luke] If you have volunteered to pay for the charges and all, make the arrangements and so forth yourself, yes, I would have.

persons charged with DWI to make personal phone calls; earlier permissiveness had resulted in telephones being jerked from the wall by some arrestees, while others had abused the privilege by carrying on long, pointless, and annoying conversations.

Petitioner refused Luke's offer, saying that if he could not make his own call, "no son of a bitch could call for him." Hence, neither petitioner's wife nor anyone else was notified of his incarceration until the next morning, when, at approximately 8 a. m., Mrs. Scarborough appeared and posted bail for petitioner. It is evident, of course, that if petitioner had availed himself of Luke's offer to call on his behalf, petitioner would have had full opportunity to notify his wife for aid, or to determine the availability of a physician for a blood test.

Just as in *Capler*, supra, where the unsuccessful habeas petitioner failed to demand, soon after arrest, that he be given a blood test or allowed the use of the telephone, so here did petitioner fail to avail himself of the opportunity for a timely telephone call in his behalf.

■■ We believe that the policy of making telephone calls for DWI arrestees and relaying whatever reasonable message the arrestee might have, including instructions to secure a sobriety test, is a substantial compliance with the arrestee's constitutional rights. We thus hold that petitioner, by refusing the arresting officer's offer to make a call on his behalf, effectively waived his right to attempt to secure an objective scientific evaluation of his sobriety. Petitioner is, then, himself responsible for the loss of any potentially exculpatory evidence; under such circumstances the state cannot be charged with fault to taint the validity of his conviction.

## II. THE RELEASE OF ESTES

■ Petitioner's second contention is that the prosecution purposely released William Estes from jail prior to the expiration of his sentence to preclude Estes from being available for testimony

favorable to petitioner concerning his sobriety on the night of arrest, and that such action constitutes suppression of evidence. We find that this contention rests purely upon petitioner's assumptions, which are flatly contradicted by practically undisputed evidence. Estes, an inmate in the jail on the night of petitioner's incarceration, was being detained on a charge of false pretenses. He had been in jail for about two months previously, and remained so confined until his conviction. On October 21, Estes entered a plea of guilty and received a sentence of four months, with credit for time served. Since Estes had already spent three months in jail and was routinely allowed good time credit of one-fourth of the sentence, this resulted in his release from jail the day following sentence. This action was authorized by Sheriff Harpole, without an order from the court or board of supervisors. Harpole explained he permitted the early release because of an outstanding detainer against Estes by the State of Arkansas on another criminal charge, and Estes was released to the Arkansas authorities upon waiver of extradition.

Prior to Estes' release, however, petitioner, several days after his own arrest, had interviewed and obtained a favorable statement from Estes regarding the extent of petitioner's intoxication. Moreover, Estes was a witness at the justice of the peace trial, where he repudiated the substance of his written statement obtained by petitioner. Estes did not appear at the trial in circuit court, which occurred after his transfer to Arkansas, although petitioner and his counsel were notified of his last known whereabouts in Arkansas. Notwithstanding the fact that neither petitioner nor Jordan was able to contact Estes after his removal to Arkansas, there is no factual basis for holding that the prosecution denied petitioner access to Estes, or was in any way responsible for Estes' failure to testify at the circuit court trial. Moreover, petitioner has failed to show that the testimony of Estes, if available, would have

been of any benefit to him, or be such as to make it a reasonable likelihood that with Estes' testimony, petitioner would not have been convicted.

## III. INADEQUATE REPRESENTATION OF COUNSEL

■ The final issue posed by petitioner concerns the alleged failure of petitioner's attorney, Jordan, to raise at the circuit court trial the issue of incommunicado detention or the question of the prosecution's intentional suppression of evidence regarding Estes' testimony. These claims, too, are utterly baseless and without merit.

The evidence discloses that in preparing for petitioner's circuit court trial, Jordan, an attorney experienced in criminal cases, thoroughly explored all avenues of defense. He discussed at length with petitioner possible claims of incommunicado detention and suppression of evidence. Jordan also interviewed Luke and Sheriff Harpole, who explained that petitioner had been allowed access to a telephone call but had refused the offer. When petitioner advised him that he was unable to remember whether Luke had offered to make a phone call in his behalf, Jordan properly concluded that the issue of incommunicado detention was a red herring and without factual basis.[7] Jordan was of the view that, for petitioner to prevail on this point, he would have to prove a specific

and timely request for a blood test, an offer to pay for the administration of the test, and that there then existed a readily available means for obtaining the test. On the available evidence, Jordan was satisfied that these elements could not be shown. Jordan was also reluctant to broach the issue for another reason unrelated to the merits of petitioner's claim. In interviews with Luke and Harpole, Jordan had learned of petitioner's offensive verbal reaction to the officer's offer of a phone call. As an experienced trial attorney, Jordan knew that probing in this area would almost certainly lead to revelation of petitioner's vulgarism, a fact which Jordan quite reasonably believed would damage petitioner's case to the jury. It should also be noted that, even with perfectly valid legal and tactical reasons for not pressing petitioner's incommunicado detention claim, Jordan still managed to preserve the issue sufficiently to allow consideration of it by the Supreme Court of Mississippi.

Regarding Estes, Jordan stated that every effort was made to locate and obtain Estes as a witness at trial, and that he dispatched Scarborough to Arkansas to search for him. Jordan was of the view, however, and so advised his client, that testimony from Estes, if available, would probably be of small value because of his repudiation of his written statement at the justice of the

---

7. Q. [Scarborough] Why didn't you bring up the fact that the denial of the phone call and incommunicado detention was a denial of my federal constitutional rights or my state constitutional rights in a state court?
A. [Jordan] Well, with my limited knowledge of constitutional law, I'd say that in that particular field that I've had a great deal of experience, and in my opinion, you were not held incommunicado, that your right to communicate with the outside world was substantially complied with, and that after officer Luke had told me what you had said, I didn't particularly want to bring that out.
Q. Why shouldn't a defense attorney bring that out?
A. This would have come out if we had gone into this collateral issue. In other words,

in my opinion, Chuck, your rights were substantially complied with when he offered to make that phone call for you.
Q. How do you know he offered to make a a phone call for me?
A. This is what the facts would have shown.
Q. But this never came up in the trial.
A. This is the reason we investigate these matters prior to a trial.
Q. You don't know beforehand that's what the facts would have shown. The jury has to decide that.
A. I know what the testimony would be. And your testimony would have been that you didn't know whether or not—you couldn't say one way or the other whether he did or did not. What you told me.
Q. Did or did not what?
A. Did or did not offer to make a phone call for you.

peace trial. On cross-examination, petitioner acknowledged that he had fully discussed these points with Jordan before the trial and conceded that he expressed no dissatisfaction to Jordan regarding the latter's handling of the case before the jury returned its verdict of guilty.[8]

We thus hold on these facts that Jordan thoroughly investigated the facts and researched the applicable law in petitioner's case, and that he afforded petitioner reasonably effective representation, thus satisfying the requirement of the Constitution. Williams v. Beto, 354 F.2d 698 (5 Cir. 1965); Herring v. Estelle, 491 F.2d 125 (5 Cir. 1974). As the Fifth Circuit stated in *Herring*:

"We interpret the right to counsel as the right to effective counsel. We interpret counsel to mean not errorless counsel, and not counsel judged defective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance."

In summary, the court holds that petitioner's claims are utterly wihout merit in that he was not denied the opportunity to have a telephone call timely made on his behalf; he was not denied the reasonable opportunity to procure a blood test or other scientific test pertinent to the state of his intoxication;

the prosecution did not purposely suppress evidence favorable to petitioner or make Estes unavailable to petitioner for testimonial purposes; and petitioner was not denied effective assistance of counsel. The petition for writ of habeas corpus is, therefore, denied.

Let an order be issued accordingly.

## APPENDIX A

### REPORT AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE

On July 19, 1971 Charles T. Scarborough, petitioner, was convicted of driving under the influence of intoxicating liquor after a trial by jury in the Circuit Court of Oktibbeha County, Mississippi. Petitioner was sentenced to pay a fine of $200.00 and to be imprisoned for a term of thirty days, with the jail time suspended on "good behavior." Petitioner seeks federal habeas corpus relief, having exhausted his state court remedies.[1] Petitioner, an associate professor of mathematics at Mississippi State University, has paid the Clerk's filing fee, and, although able to afford counsel, has elected to proceed in this action *pro se*, as he has in all of the earlier proceedings subsequent to his Circuit Court trial. Petitioner was represented by retained counsel at his trials

---

8. In fact, this evidence closely approaches a deliberate by-pass of state remedies, for where a petitioner "deliberately sought to subvert or evade the orderly adjudication of his federal defenses in the state courts," Fay v. Noia, 372 U.S. 391, 433, 83 S.Ct. 822, 846, 9 L.Ed.2d 837 (1963), he is thereafter barred from raising such matters in a federal habeas corpus proceeding. Sokol, Federal Habeas Corpus (2d Ed.) § 22.3, pp. 167–68. The criteria for invoking a deliberate by-pass being very strict, we have therefore addressed petitioner's constitutional claims on the merits.

1. Petitioner was initially tried and convicted of the offense in Justice of the Peace Court on November 16, 1970, and was sentenced to pay a fine of $500.00 and to be imprisoned in the County Jail for thirty days. He appealed to the Circuit Court of Oktibbeha County, where he was tried by a jury, convicted, and received the sentence presently being collaterally attacked. He appealed to the Supreme Court of

Mississippi, which affirmed, Scarborough v. State, 261 So.2d 475 (Miss.1972). Rehearing was denied by the state Supreme Court on May 15, 1972, 261 So.2d 475. After certiorari was denied by the Supreme Court of the United States, Scarborough v. Mississippi, 410 U.S. 946, 93 S.Ct. 1353, 35 L.Ed.2d 613 (1973), petitioner applied to the state Supreme Court for leave to file a petition for writ of error *coram nobis*, which was denied on October 8, 1973. There is, of course, no transcript of the proceedings in the Justice Court, but transcripts of most of the proceedings in the Circuit Court and the state Supreme Court are a part of the record here. All of the grounds relied on here were raised by petitioner in one or more of the state court proceedings of record in such fashion as to fairly present them for consideration on the merits. He has therefore exhausted his state court remedies within the meaning of 28 U.S.C. § 2254(b) & (c). Respondent has not made exhaustion of state remedies an issue.

in the Justice of the Peace and Circuit Courts, but different attorneys represented him at each trial.

Because of the extreme prolixity of the petition, petitioner was ordered to file a supplemental pleading containing *inter alia* a concise statement of each separate ground upon which he seeks to attack his state court conviction. Petitioner's supplemental pleading enumerates 16 grounds of attack, several of which are overlapping. Stated succinctly, the grounds of collateral attack raised in the petition, as clarified by the supplemental pleading, are as follows:

1. Petitioner was denied his Sixth Amendment right to effective assistance of counsel because the attorney retained by him to handle the Circuit Court trial failed to offer certain evidence allegedly tending to establish the innocence of petitioner, and failed to raise certain defenses which petitioner desired to raise and specifically called to the attention of his retained counsel.

2. The prosecution suppressed potentially exculpatory evidence and knowingly used false and prejured testimony at petitioner's Circuit Court trial.

3. The prosecution used threats and intimidation to force a defense witness to change his testimony prior to petitioner's Justice of the Peace Court trial and then knowingly and intentionally permitted such false testimony to be offered in the Justice of the Peace Court, resulting in petitioner's conviction there.

4. The State denied petitioner due process and suppressed potentially exculpatory evidence by holding petitioner incommunicado in the Oktibbeha County Jail for several hours following his arrest, thereby preventing petitioner from obtaining witnesses as to his sobriety at the crucial time and preventing him from obtaining, or attempting to obtain, a blood test which would have demonstrated his innocence of the offense charged, despite his repeated requests that he be given a blood test and allowed to use the telephone.

5. The statute under which petitioner was convicted was unconstitutionally vague in that it contains no precise definition of the terms "intoxication" or "under the influence."

6. Section 15 of the "Mississippi Implied Consent Act" is unconstitutionally vague for the same reason.

The petition recites in great detail the facts upon which petitioner bases his claims, his arguments in support thereof, and cites authorities. Numerous exhibits, consisting of records of previous legal proceedings, correspondence directed to petitioner's attorney in the Circuit Court, and legal materials, are attached as exhibits. A transcript of the Circuit Court trial is attached to the supplemental pleading, together with a copy of petitioner's assignment of errors in the Supreme Court of Mississippi.

Respondent's answer includes denials of the "allegations" contained in each separate ground for relief enumerated in the supplemental pleading. The answer does not respond directly to the petition itself, but since the order requiring the supplemental pleading was intended to result in a distillation of the allegations of the petition itself, respondent's denials are considered for purposes of this report as denials of the factual allegations of the petition supporting the grounds for relief specified in the supplemental pleading.

Respondent also argues that the petition is moot because petitioner has paid his fine and the period of suspension of his sentence has expired. Respondent says that petitioner is now suffering no harmful collateral conse-

quences of his conviction, and the petition should therefore be dismissed as moot.

Respondent also contends that even if petitioner's factual allegations are true, they would not support a finding of denial of any constitutional right.

Petitioner has filed a traverse in which he takes issue with respondent's mootness argument. Petitioner contends that because execution of his sentence was stayed by his various appeals and during the pendency of his petition for certiorari to the Supreme Court of the United States, and because the mandate of the Supreme Court of Mississippi did not issue until some time subsequent to February 20, 1973, his suspended sentence is still in effect, and his petition is therefore not moot. Attached to the traverse are copies of the Circuit Court judgment and a communication from the Clerk of the Supreme Court of Mississippi evidencing the granting of a stay of execution of the judgment by that Court, pending petitioner's application for certiorari to the Supreme Court of the United States.

## I. IS THE PETITION MOOT?

Respondent's mootness argument is based entirely upon the assumption that petitioner's period of suspension has expired. It is settled law that one at liberty on parole is, during the period of his parole, "in custody" within the meaning of 28 U.S.C. § 2254(a) so as to entitle him to seek federal habeas corpus relief. Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963). Even a person convicted of a misdemeanor and released on his own recognizance is deemed to be "in custody" within the meaning of the federal habeas corpus statute. Hensley v. Municipal Court, 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973). Since under Mississippi law violation of the conditions of suspension of a sentence can result in imprisonment, § 99–19–29, Mississippi Code (1972), such a suspended sentence is, for all practical purposes, the func-

tional equivalent of a parole, and one at liberty on a suspended sentence is during the period of suspension "in custody" within the meaning of the federal habeas corpus statutes.

Petitioner was convicted and sentenced in the Justice of the Peace Court on November 16, 1970. On the same day he perfected an appeal to the Circuit Court by filing the statutory appeal bond. Such an appeal operates as a stay of the judgment of the Circuit Court. §§ 99–35–1 & 99–35–3, Mississippi Code (1972). Upon his conviction in the Circuit Court petitioner perfected an appeal to the state Supreme Court, which operated as a stay of the Circuit Court's judgment. § 99–35–109, Mississippi Code (1972). After affirmance the state Supreme Court granted a further stay on June 12, 1972. The United States Supreme Court denied certiorari on February 20, 1973, and the state Supreme Court's stay of the judgment was obviously not vacated by the issuance of the mandate to the trial court until some time after that date. Thus, the sentence imposed upon petitioner in the Circuit Court did not become operative until a time subsequent to February 20, 1973.

The trial transcript reveals that the Circuit Judge pronounced the following sentence from the bench:

> "BY THE COURT: The sentence of the law is you pay a fine of $200.00 and you be confined to the county jail for thirty days, which will be suspended on your good behavior." (Trial transcript, p. 39)

Petitioner contends that the trial transcript is in error and that the sentence actually pronounced by the Court is as set forth in the written judgment, a copy of which is attached to the traverse. The pertinent portion of the written judgment reads as follows:

> "Whereupon, for said offense, it is ordered that he, the said Charles T. Scarborough Jr. be and is hereby sentenced to 30 days in Jail Suspended

upon his good behavior for a period of 2 years and pay a fine of $200.00 and all court costs."

Under the Mississippi law in effect at the time of petitioner's trial a suspended sentence imposed in a misdemeanor case may not be revoked after a period of five years. § 2541, Mississippi Code (1942) [now § 99–19–25, Mississippi Code (1972)]. A decision of the Mississippi Supreme Court interpreting similar statutes indicates that, unless the trial court orders a shorter period of suspension, a suspended misdemeanor sentence will continue in effect for five years. Jackson v. Waller, 248 Miss. 166, 156 So.2d 594 (1963), opinion modified, 248 Miss. 166, 160 So.2d 184 (1964).

It is therefore unnecessary for purposes of the present action to attempt to resolve the issue of whether the sentence imposed upon petitioner was as set forth in the trial record, or as embodied in the written judgment, since regardless of whether the period of suspension is two years or five years, neither period of time has elapsed since the sentence became effective. The earliest possible date upon which even a two year suspension might expire would be February 20, 1975, and that assumes the termination of the stay of judgment and issuance of the mandate by the state Supreme Court on the same day the United States Supreme Court denied certiorari—a highly unlikely circumstance.

Wade v. Carsley, 433 F.2d 68 (5 Cir. 1970), relied upon by respondent, is not in point because in that case the misdemeanor sentence sought to be collaterally attacked had been fully served before the petition was filed, and no harmful collateral consequences were found to be present.

The petition is not moot, and petitioner is therefore entitled to consideration of his contentions on their merits.

## II. STATUTORY VAGUENESS

Of course, if the statute under which petitioner was prosecuted is unconstitutionally vague, no prosecution thereunder may stand, and it will be unnecessary to consider the other points raised. For that reason the vagueness argument is considered at the outset.

Petitioner was prosecuted for driving a motor vehicle while under the influence of intoxicating liquor in violation of § 8174, Mississippi Code (1942).[2] Petitioner's vagueness argument is grounded upon the failure of the statute to precisely define what is meant by "under the influence of intoxicating liquor."

In Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926) the Supreme Court stated the relevant considerations when a statute is attacked as unconstitutionally vague:

"That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render · them liable to its penalties is a well-recognized requirement, consonant alike with ordinary

---

2. "8174. Persons under the influence of intoxicating liquor or narcotic drugs.

(a) It is unlawful and punishable as provided in subdivision (b) of this section for any person who is an habitual user of narcotic drugs or any person who is under the influence of narcotic drugs, marijuana, barbiturates, intoxicating liquor or of any proprietary or patent medicine by whatsoever name called, which, if drunk to excess, will produce intoxication, to drive any vehicle within this state.

(b) Every person who is convicted of a violation of this section shall be punished by imprisonment for not less than ten days nor more than one year, or by a fine of not less than one hundred dollars ($100.00) nor more than one thousand dollars ($1,000.00), or by both such fine and imprisonment. On a second or subsequent conviction he shall be punished by imprisonment for not less than ninety days nor more than one year, and, in the discretion of the court, a fine of not more than one thousand dollars ($1,000.00).

The commission shall revoke the operator's or chauffeur's license of any person convicted under any of the provisions of this section."

notions of fair play and the settled rules of law; and a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law . . .

The question whether given legislative enactments have been thus wanting in certainty has frequently been before this court. In some of the cases the statutes involved were upheld; in others, declared invalid. The precise point of differentiation in some instances is not easy of statement; but it will be enough for present purposes to say generally that the decisions of the court, upholding statutes as sufficiently certain, rested upon the conclusion that they employed words or phrases having a technical or other special meaning, well enough known to enable those within their reach to correctly apply them, . . . or a well-settled common-law meaning, notwithstanding an element of degree in the definition as to which estimates might differ, . . . or, as broadly stated by Mr. Chief Justice White in United States v. Cohen Grocery Co., 255 U.S. 81, 92, 41 S.Ct. 298, 301, 65 L.Ed. 516, 14 A.L.R. 1045, 'that, for reasons found to result either from the text of the statutes involved or the subjects with which they dealt, a standard of some sort was afforded.' " (citations omitted) 269 U.S., at 391–392, 46 S.Ct., at 127–128.

Forty-five years later, in holding a municipal ordinance prohibiting conduct "annoying to persons passing by, or occupants of adjacent buildings" to be unconstitutionally vague, the Court, following *Connally* made this statement:

"Conduct that annoys some people does not annoy others. Thus, the ordinance is vague, not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all. As a result, 'men of common intelligence must necessarily guess at its meaning.' " (citation omitted) Coates v. City of Cincinnati, 402 U.S. 611, 614, 91 S. Ct. 1686, 1688, 29 L.Ed.2d 214 (1971).

Thus, a statute which establishes an imprecise but comprehensible normative standard is not unconstitutionally vague, but a statute which specifies no standard of conduct at all may not stand. In *Connally* it was held that a penal statute employing words or phrases having a "special meaning, well enough known to enable those within their reach to correctly apply them," 269 U.S., at 391, 46 S.Ct., at 127, is not unconstitutionally vague.

The statute under which petitioner was prosecuted was not a new one. It had been in effect for more than thirty years at the time of his prosecution. The term "under the influence of intoxicating liquor," while perhaps lacking in mathematical or scientific precision, is nevertheless a "comprehensive normative standard" and has a "special meaning, well enough known to enable those within [its] reach to correctly apply [it]." In this day and age driving under the influence of intoxicating liquor is a commonly discussed and well understood concept. Any lack of precision in the wording of the statute certainly does not amount to a failure to specify any standard of conduct at all. Petitioner's attack upon the constitutionality of the statute under which he was presented is therefore not well taken.

Petitioner also contends that the Mississippi Implied Consent Law, § 63–11–1 et seq, Mississippi Code (1972) is void for vagueness. The events resulting in petitioner's prosecution took place on September 26, 1970. The Mississippi Implied Consent Law was adopted by the 1971 Session of the State Legislature, and did not become effective until April 1, 1972. Since petitioner was not prosecuted under the new act and its provisions could have no application to his case, he has no standing

to question the constitutionality of the statute and the Court need not consider it.

## III. INCOMMUNICADO DETENTION

It is alleged by petitioner that during the night of September 26, 1970 sometime between 11:30 P.M. and midnight, as he was driving his automobile along United States Highway 82 headed in an easterly direction toward Starkville, Mississippi, he was stopped by an officer of the Mississippi Highway Patrol and charged with driving under the influence of intoxicatiing liquor. He further says that while he was being driven from the scene of his arrest to the Oktibbeha County Jail in Starkville he requested that he be given a blood test for the purpose of establishing his sobriety, and was refused. He further says that after he arrived at the jail he again requested a blood test and also several times requested to be permitted to use the telephone, which requests were ignored. He also says that he overheard one of the officers instruct the jailer that he was not to be allowed to make a telephone call for five hours. It is further alleged that petitioner was held incommunicado at the Oktibbeha County Jail until the following morning, at which time he was permitted to telephone his wife. Although respondent has denied these allegations, they are fully corroborated by the trial court record. They were also accepted as substantially correct by the Supreme Court of Mississippi on petitioner's direct appeal of his conviction. *See* 261 So.2d at 476–477. Despite the denial by respondent, the facts as hereinabove set forth were sufficiently developed at the state court trial to be accepted as established for purposes of this action. 28 U.S.C. § 2254(d).

Petitioner argues that on these facts the state denied him due process of law in that his incommunicado detention amounted to a suppression of potentially exculpatory evidence and forever deprived him of the opportunity to ob-

tain evidence in corroboration of his own testimony as to his innocence of the offense charged. It does not appear that petitioner's retained counsel made that precise argument during the trial, but in his *pro se* appeal to the Supreme Court of Mississippi petitioner assigned it as error. Petitioner scored a victory of sorts in the state Supreme Court. Although his conviction was affirmed, it was held by the Supreme Court of Mississippi that such incommunicado detention amounted to a denial of due process. Petitioner's conviction was affirmed because (1) the rule announced by the state Supreme Court was held to be prospective only; (2) petitioner caused the arresting officers "some trouble" which the Court held justified them in refusing to "carry him to the hospital," 261 So.2d, at 480; and (3) petitioner failed to show at his trial that the requested blood test could, in in fact, have been made at or near the time of his arrest.

The federal courts have had little occasion to deal with the precise constitutional issue here presented. In fact, Capler v. City of Greenville, 298 F.Supp. 295 (ND Miss. 1969), affirmed, 422 F.2d 299 (5 Cir. 1970) is apparently the only reported federal decision touching upon the issue. The Court of Appeals for the Fifth Circuit affirmed this Court's denial of habeas corpus relief, while recognizing the constitutional principle contended for by petitioner, because the petitioner in *Capler* did not make a request that he be given a blood test or allowed to use the telephone, and *did not show that his failure to make such a request sprang from knowledge that the police would not grant it.* 422 F.2d, at 301–302. Here, of course, petitioner did make such requests, which were either denied or ignored by the officers having him in custody.

Even though there is a scarcity of federal authority on the point, a number of state courts have held that it is a denial of due process to deny one charged with an offense involving intoxication the right to attempt to ob-

tain at his own expense a blood or other scientific test for the purpose of attempting to establish his sobriety at the crucial time. Scarborough v. State, 261 So.2d 475 (Miss.1972); State v. Snipes, 478 S.W.2d 299 (Mo.1972); People v. Burton, 13 Mich.App. 203, 163 N.W.2d 823 (1968); Harlan v. State, 430 S.W.2d 213 (Tex.Cr.App.1968); State v. Reyna, 92 Idaho 669, 448 P.2d 762 (1968); State v. Streitz, 276 Minn. 242, 150 N.W.2d 33 (1967); Paul v. State, 111 Ga.App. 13, 140 S.E.2d 289 (1965); Re Koene, 54 Cal.2d 757, 8 Cal. Rptr. 435, 356 P.2d 179 (1960); Re Newbern, 175 Cal.App.2d 862, 1 Cal.Rptr. 80, 78 A.L.R.2d 901 (1959); State v. Munsey, 152 Me. 198, 127 A.2d 79 (1956). The cited decisions recognize that since the bodily processes will within a brief time reduce the blood alcohol level to the point where an untimely blood test will be of little probative value, on the issue of the accused's condition at the crucial time, incommunicado detention under such circumstances violates the due process rights of the accused because it amounts to a suppression of potentially exculpatory evidence. *See* Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). They hold that, while the state is not required to provide an accused with such a test, at the same time it may not unreasonably prohibit him from attempting to obtain one himself at his own expense. This appears to be consistent with, and a corollary of, the well established principle that incommunicado detention may not be utilized as a device by which to extract incriminating statements from an accused. *E. g.* Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964); Gallegos v. Colorado, 370 U.S. 49, 82 S. Ct. 1209, 8 L.Ed.2d 325 (1962).

Recognizing that the state court decisions are not binding on this Court,

but are entitled to the weight which the federal practice gives to decisions of the courts of last resort of other judictions, Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), and aided by such federal light as is shed on the question by Capler v. City of Greenville, *supra,* the conclusion is inescapable that the Fourteenth Amendment "fair play" doctrine requires this Court to hold, as a matter of constitutional law, that one who is charged with a criminal offense of which a physical condition or state of the accused is an element, and when such physical condition or state is subject to change with the passage of time to the extent that evidence thereof may be lost unless preserved within a relatively brief period of time, the accused is denied due process of law if he is held incommunicado and the authorities deny his request to be allowed to attempt to arrange by telephone—or other appropriate means of communication—for blood or other scientific tests which would be reliably indicative of the physical condition or state in question at the crucial time.[3]

In Scarborough v. State, *supra,* the Mississippi Supreme Court—the only court to do so—conditioned vindication of the right upon the prisoner's ability to demonstrate "[a]vailability of facilities and personnel to make test at time and place requested which is reasonably accessible to the place of incarceration," 261 So.2d, at 479 and denied relief because petitioner made no such showing at his trial. This requirement is out of keeping with both the nature of the right and the rationale adopted by other courts in holding the right to exist. An accused has no absolute right to have the test made, since under the circumstances existing at the time it may prove to be impossible to obtain a timely test. The accused is, however, entitled "to have a reasonable opportunity to attempt to gather the desired evidence." State v.

3. The practice of incommunicado detention of persons charged with such offenses also results in their being deprived of the opportunity to obtain non-police witnesses as to their con- dition at the crucial time, and the right to obtain counsel—who might seek immediately release from custody by way of habeas corpus if bail is denied.

Munsey, *supra*, 127 A.2d, at 82. Since neither the detaining officers nor the accused can possibly know beforehand whether the accused will be successful in obtaining the test, a proper respect for the constitutional guarantee of due process would seem to dictate against requiring an accused who is denied his right to make the attempt to prove— perhaps weeks, months or even years later—as a condition of his vindication of that right, that he could have obtained the test had he been afforded the opportunity. The most practical and convincing—and most fair—method of proof as to the availability *vel non* of the test at the crucial time is to permit the accused to make the attempt.

Some of the state court decisions have conditioned the constitutional right upon orderly conduct on the part of the accused, *E.g.* Scarborough v. State, *supra*; Re Koene, *supra*; State v. Munsey, *supra*. However, the other decisions recognizing the right have not attached any such condition to it.

Mere agitation or unruliness on the part of an accused should not be sufficient cause to justify the officers in denying him his right to attempt to arrange for a blood or other test, or to have counsel, friends or relatives attempt to do so for him, and to have such test made if it is available. Outrage at the arrest is at least as consistent with innocence as with guilt. On the other hand, officers should not be expected to endanger their safety or the custody of the prisoner in the course of permitting him to exercise this constitutional right. A reasonable approach would seem to be that refusal to allow the prisoner to make the desired communication or to have the test made—either at the jail or elsewhere—must be based upon a reasonable apprehension on the part of the officers that, under the circumstances then existing, the prisoner will inflict harm upon the officers, himself, or others, or that his custody will be endangered, if he is afforded such an opportunity.

There is some evidence in the state court record that petitioner was highly agitated both at the time of his arrest on the highway and at the county jail. However, it does not clearly appear from the transcript whether or not petitioner's conduct was such as to justify a reasonable apprehension of danger on the part of the officers if he were to be allowed to use the telephone as he requested, or in actually having the test made. This point was not directly at issue in the state court trial, and the facts bearing thereon were not fully developed by either side. Accordingly, unless the constitutional rule is to be purely prospective so as to deny its benefit even to petitioner, an evidentiary hearing will be necessary to determine whether or not, consistent with the requirements of due process, petitioner's conduct at the time of his arrest and booking at the county jail was such as to justify the officers' refusal to allow him to use the telephone. 28 U.S.C. § 2254(d)(3).

The retroactivity decisions of the Supreme Court are thoroughly analyzed in the recent decision if the Court of Appeals for the Fifth Circuit in Williams v. Estelle, 5 Circuit, 500 F.2d 206 (decided September 6, 1974), in which it is said:

> "The Court has never refused retroactive application where the condemned practice had not received at least substantial support from prior rulings." 500 F.2d p. 210.

Here, not only has the condemned practice not received substantial support from prior rulings, but every court which has spoken directly on the subject has found the practice abhorrent to due process. Except for such guidance as may indirectly be furnished by Capler v. City of Greenville, *supra*, the federal courts have simply not spoken to the point, and *Capler* cannot be construed to support the practice here in question.

Furthermore, in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199

(1967), the Supreme Court, in holding that the pretrial confrontation rule announced in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) was not to be given retrospective application, even though Wade and Gilbert themselves received the benefit of the new rule, the Court said:

> "We recognize that Wade and Gilbert are, therefore, the only victims of pretrial confrontations in the absence of their counsel to have the benefit of the rules established in their cases. That they must be given that benefit is, however, an unavoidable consequence of the necessity that constitutional adjudications not stand as mere dictum. Sound policies of decision-making, rooted in the command of Article III of the Constitution that we resolve issues solely in concrete cases or controversies, and in the possible effect upon the incentive of counsel to advance contentions requiring a change in the law, militate against denying Wade and Gilbert the benefit of today's decisions. Inequity arguably results from according the benefit of a new rule to the parties in the case in which it is announced but not to other litigants similarly situated in the trial or appellate process who have raised the same issue. But we regard the fact that the parties involved are chance beneficiaries as an insignificant cost for adherence to sound principles of decision-making." 388 U.S. at 301; 87 S.Ct., at 1972.

Since it is in this case that a federal court first announces this particular constitutional rule, the sound principles of decision-making discussed in *Stovall* require that petitioner be given the benefit of the rule, regardless of whether or not its general application is to be retrospective or prospective—a question which it is unnecessary for this Court to decide in this case.

Accordingly, an evidentiary hearing should be held.

## IV. SUPPRESSION OF EVIDENCE AND USE OF FALSE OR PERJURED TESTIMONY

Petitioner alleges that when he was placed in a cell at the Oktibbeha County Jail immediately after his arrest, he had three cellmates, one of whom was one William Estes. He says that after he was released from custody on the morning following his arrest, he returned to the jail in the company of the Circuit Clerk of Oktibbeha County, was permitted to speak with Estes, and obtained from him a sworn statement in writing to the effect that petitioner did not appear to be intoxicated or under the influence of alcohol when Estes first saw him on the night of his arrest. A photocopy of Estes' statement is attached to the petition as Exhibit G. Petitioner further alleges that between the time he obtained the written statement from Estes and his trial in Justice of the Peace Court, officers of the Oktibbeha County Sheriff's Department intimidated Estes to the extent that when Estes testified in Justice of the Peace Court, his testimony was considerably less favorable to petitioner than was his written statement. Petitioner says that after the trial in Justice Court he was told by Estes that Estes had changed his testimony because of pressure brought to bear by law enforcement officers. It is further alleged that the Sheriff of Oktibbeha County purposely released Estes from custody prior to expiration of his county jail sentence so that he would not be available to testify at petitioner's trial in Circuit Court. Petitioner says that this was part of a scheme, design or conspiracy on the part of officers of the state to deprive him of Estes' testimony to the effect that he was not intoxicated or under the influence of intoxicants when brought to the jail. Petitioner says that, despite repeated attempts to locate Estes at his parents' home and elsewhere, he has never been able to find him and was therefore deprived of his testimony in the Circuit Court. He says that he knew the length

of Estes' county jail sentence and was planning to "take his deposition" for use in the Circuit Court trial. He says that the early release deprived him of this opportunity, and was carried out for that express purpose.

Where the state knowingly uses false testimony to obtain a conviction, such a conviction violates the due process rights of the accused and cannot be permitted to stand. Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). Also, where the state suppresses evidence potentially favorable to the accused the same result obtains. Brady v. Maryland, *supra*. The complicity of the state is not to be judged by the knowledge or intent of the prosecuting attorney alone, and the state is equally chargeable with the acts of law enforcement officers. Smith v. Florida, 410 F.2d 1349 (5 Cir. 1969); Luna v. Beto, 395 F.2d 35, 41 (5 Cir. 1968) (specially concurring opinion of Chief Judge Brown).

Whether or not petitioner could have made use of Estes' deposition at his Circuit Court trial, Estes could have been served with a witness subpoena if found within the state, or if in jail his attendance as a witness could have been compelled by habeas corpus *ad testificandum.*

The allegations of petitioner are denied by respondent, and there was no testimony at the Circuit Court trial bearing on these issues. The issues were not raised by petitioner in the Circuit Court, and although he assigned them as error on his direct appeal, the state Supreme Court refused to consider them because no record was made in the trial court. 261 So.2d, at 477. The issues were again raised by petitioner in his motion for leave to file a petition for writ of error *coram nobis,* which was denied. Thus, no evidentiary hearing has ever been held thereon. Petitioner alleges that he asked his attorney to raise the issues at the trial, but he did not do so. The allegations being denied, this raises another factual issue—whether or not there was a deliberate bypass of the opportunity to have the factual issues resolved in the state court. Fay v. Noia, *supra.*[4]

The issues treated under this part being largely factual in nature, an evidentiary hearing should be held in order to determine (1) whether or not there was a deliberate bypass in the trial court; and if not (2) whether or not there was a deliberate use of perjured testimony and/or a suppression of evidence favorable to petitioner, as he alleges. 28 U.S. C. § 2254(d)(1).

Petitioner also contends that the testimony of certain law enforcement officers at his Circuit Court trial was perjured. However, no evidentiary hearing need be held on this issue, since petitioner's allegations are wholly conclusory and are based upon the fact that petitioner does not agree with the testimony of the officers.

## V. EFFECTIVE ASSISTANCE OF COUNSEL

Petitioner complains that his retained attorney did not raise the incommunicado detention, intentional use of perjured testimony, and suppression of evidence issues at his Circuit Court trial, even though petitioner himself desired that such issues be raised and specifically requested his attorney to do so. These allegations are supported by copies of written communications directed by petitioner to his attorney, attached to the petition herein as Exhibits A, C, D, E, and F.

The trial transcript shows that the issues were not raised in such fashion as to obtain rulings thereon by the Circuit Judge, and the petitioner was unable to obtain rulings on certain of the issues on his direct appeal to the state Supreme Court because of the absence of a trial court record thereon.

An accused in a criminal case is entitled to "counsel reasonably likely to render and rendering reasonably effective assistance." Lee v. Hopper, 5 Cir., 499 F.2d 456, at p. 461 (decided August 23, 1974); MacKenna v. Ellis, 280 F.2d

---

4. This is also true of the factual issues found to exist under Part III of this report.

592 (5 Cir. 1960), cert. den. 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1961).

Petitioner's written communications to his attorney clearly evidence a desire on his part to litigate these issues, which were not frivolous. The copy of the decision of the California District Court of Appeals in *Re Newbern, supra,* and the annotation found at 78 A.L.R.2d 905 allegedly forwarded by petitioner to his attorney, attached to the petition as Exhibit A, show that the attorney was advised of the substantial authority supporting petitioner's position on the incommunicado detention issue. Why these points were not raised by counsel cannot be determined from the present state of the record. Since effective assistance of counsel is a mixed issue of law and fact, *see* Lee v. Hopper, *supra,* an evidentiary hearing is necessary on this issue. 28 U.S.C. § 2254(d)(1).

### RECOMMENDATIONS

It is therefore recommended that an evidentiary hearing be held on the issues designated in parts III, IV, and V, of this report.

Respectfully submitted, this the 20th day of September, 1974.

(s) J. David Orlansky