261 So.2d 475 (1972)
Charles T. SCARBOROUGH, Jr.
v.
STATE of Mississippi.
No. 46687.
Supreme Court of Mississippi.
March 27, 1972.
Rehearing Denied May 15, 1972.
*476 Charles T. Scarborough, Jr., pro se.
A.F. Summer, Atty. Gen., by Timmie Hancock, Sp. Asst. Atty. Gen., Jackson, for appellee.
SUGG, Justice:
Appellant was convicted of DWI in justice of the peace court and on appeal and trial de novo in the Circuit Court of Oktibbeha County was again convicted and sentenced to pay a fine of $200 and serve thirty days in jail, the jail sentence being suspended.
On the night of September 26, 1970 the appellant was arrested on a charge of driving while intoxicated. Highway Patrolman, Virgil Luke, noticed a line of cars driving slowly approximately 40 miles per hour on Highway 82 between Starkville and Mayhew Junction. By passing, he managed to get behind the lead car which was driven by appellant. He noticed it crossing the center line several times and decided appellant was not in sufficient control of the car. After causing appellant to stop his car the patrolman requested appellant to exhibit his drivers license. Appellant riffled through his wallet and dropped several papers onto the ground. When these were picked up, the patrolman called him to the back of the car to protect him from the flow of traffic and noticing that the appellant was not steady on his feet and smelled of alcohol, he placed him under arrest.
Thereupon the appellant became upset, told the arresting officer he was crazy and in the words of the officer, "called me a lots of other names." Fearing that he might become unmanageable, the patrolman radioed for additional patrolmen to help if it proved necessary. No other highway patrol cars were in the vicinity so he asked a policeman to meet him at the city limits. When they arrived at the county jail three other officers met them. The appellant used profanity directed toward the arresting officer while being escorted from the patrol car to the jail, and threatened him with a charge of police brutality. Appellant was placed in jail and held there incommunicado until morning.
At the trial in circuit court all four officers testified that the appellant was under the influence of intoxicating liquor.
Appellant testified in his own behalf stating that he and his wife had a late supper about 8:30 p.m.; that about 10:00 p.m. he drove slowly to West Point and drank two eight ounce glasses of beer at the Southern Inn. He further testified that he went to Mize's Lounge around 11:00 p.m. and ordered a glass of beer which he sipped until about 11:30 p.m., which is closing time.
Mrs. Ricks, an employee of Mize's Restaurant in West Point, testified that she served appellant one glass of beer and that he left about 11:30 p.m. and was sober at the time he left. The wife of appellant testified that her husband left home at approximately 10:00 p.m. and that he had not had any alcohol at the time he left. Appellant then introduced two character witnesses who testified that his general reputation in the community in which he lived was good.
Appellant argues five assignments of error as follows:
(1) The prosecution suppressed the evidence by not giving the appellant the opportunity to call disinterested witnesses of his choosing so that they could render a judgment as to appellant's sobriety;
(2) The appellant was convicted on perjured testimony given by the police and known to be perjured by the prosecuting attorney;
*477 (3) The trial court erred when it admitted a portion of Officer Williams' testimony in the evidence;
(4) The prosecution suppressed evidence by not giving the appellant the opportunity to call a doctor so that a blood test could be made; and
(5) The prosecution suppressed evidence by intimidating a defense witness and then releasing this witness from jail before his time was up without notifying the appellant or appellant's attorney.
Assignments of error numbered (1) and (4) will be discussed later in the opinion.
By his second assignment of error, appellant charges that perjured testimony was given by the police and such fact was known by the prosecuting attorney. Apparently, appellant is complaining about a variance in the testimony of Officers Williams and McLemore at the trial in justice of the peace court and trial in the circuit court. The record does not reflect what the testimony of the officers was at the first trial.
No objection was made at the second trial based on a variance in the testimony; therefore, appellant has not preserved the assigned error for review on appeal.
By his third assignment of error, appellant complains that the circuit judge was in error in overruling his objection to a question as leading. The record shows the following:
Q. About eleven years. Mr. Williams, were you available there at the jail in case Officer Luke had any trouble with this subject?
BY MR. JORDAN: Now we object to the question as leading.
BY THE COURT: Objection overruled.
A. Would you repeat the question?
Q. Were you available there in case Officer Luke had any trouble with this subject that you would assist him?
A. Right, sir.
The question objected to was leading, but it was harmless error, and was cured by appellant on cross-examination when he brought out the fact that the arresting officer did not need any help in handling the appellant on the night of the arrest.
By his fifth assignment of error, the appellant claims that the prosecution intimidated a defense witness, William Estes, but has gone completely out of the record to argue this assignment of error. He had knowledge, at the time of the trial, of the facts he argues to this Court in support of his assignment of error. Appellant did not raise this question on his trial; therefore, it is not properly before this Court on appeal.
Appellant's first and fourth assignments of error present the most serious questions. While being transported to jail by the arresting officer, appellant's request that a blood test be made was denied. After being placed in jail his request to use the telephone was ignored.
It was shown that it was not the practice to force or allow any prisoner to have a blood test when arrested for driving while intoxicated. The evidence also shows it was the practice to hold persons charged with intoxication several hours before they were allowed to use a telephone.
It is a matter of common knowledge that time sobers a drunk up since the level of alcohol in the blood decreases with each passing hour. The critical stage in proceedings against anyone charged with intoxication, is immediately after the arrest. To limit such a person's access to an attorney or friends until after a certain number of hours have passed is in effect denying him effective means to prepare a defense.
*478 This practice will become particularly acute when the Mississippi Implied Consent Act goes into effect April 1, 1972. The Legislature included within the act a provision giving an accused the right to an additional test conducted by anyone of his choice who is qualified. Mississippi Code 1942 Annotated, section 8175-18 (Supp. 1971). If such a practice is allowed to continue, it would in fact nullify the statute and frustrate the intention of the Legislature.
The question clearly presented is whether or not the action of the police officers amounted to a suppression of evidence that would constitute a denial of fundamental fairness and be shocking to the universal sense of justice.
This case differs from Capler v. City of Greenville, 207 So.2d 339 (Miss. 1968), in that the appellant in Capler did not make a request to use a telephone. The Fifth Circuit held in Capler v. City of Greenville, Mississippi, 422 F.2d 299 (1970) that the appellant was not deprived of due process because there was no prosecutional suppression of evidence so as to bring into play Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
Other states have held that holding a prisoner incommunicado and unreasonably ignoring his requests for assistance in procuring tests amounts to a denial of due process of law.
In State v. Munsey, 152 Maine 198, 127 A.2d 79 (1956) the Maine Court stated:
We do not think the rights of the respondent are to be ascertained from an examination of the statute. Rather are they determined by the constitutional guarantee that one may be deprived of his liberty only by due process of law. "Due process of law is another name for governmental fair play." In re Stanley, 133 Me. 91, 95, 174 A. 93, 95. Fair play requires, for example, that a respondent in a criminal case must be given a reasonable opportunity to employ and consult with counsel before trial. Chandler v. Fretag, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4. We think that for the same basic reasons a respondent charged with operation of a motor vehicle while under the influence of intoxicating liquor is entitled to a reasonable opportunity to attempt to procure the seasonable taking of a blood sample for test purposes. What is reasonable will of course depend on the circumstances. When the respondent is detained under arrest, the opportunity afforded him must be consistent with safe custody. Under ordinary circumstances, a respondent who is orderly and cooperative will be permitted to use the telephone to communicate with a qualified doctor of his own selection. In many places of temporary detention it is the practice of the officers to call a doctor at the request of the respondent. There is never certainty that these efforts will be successful or that a doctor will be procured in time to make an effective test. If all reasonable efforts fail and no blood sample is in fact procured, no rights of the respondent are infringed for his right is not to have a test sample taken but only to have a reasonable opportunity to attempt to gather the desired evidence. When the respondent is held incommunicado and his requests for assistance in procuring a doctor are unreasonably ignored or refused by the detaining officers, it may be said that the respondent is denied the essentials of governmental fair play. Officers charged with law enforcement must always be mindful that the public has as great an interest in the vindication of the innocent as it does in the punishment of the guilty. (127 A.2d at 81-82). (Emphasis added.)
In State v. Reyna, 92 Idaho 669, 448 P.2d 762 (Idaho 1968), the Idaho Court stated:
Thus, the right to due process of law does not include the right to be given a blood test in all circumstances. To hold otherwise would be to transform the accused's *479 right to due process into a power to compel the State to gather in the accused's behalf what might be exculpatory evidence. In this case, the State produced testimonial evidence of intoxication, but it had no obligation to obtain for appellant what he speculates might have been more scientific evidence of sobriety. The State may not suppress evidence, but it need not gather evidence for the accused. (448 P.2d 767). (Emphasis supplied.)
We announce as a constitutional rule that holding a prisoner incommunicado and unreasonably denying or ignoring his request for assistance to have tests made amounts to a denial of due process of law by thus suppressing possible evidence favorable to the defendant, provided the defendant can show:
1. Request to have a test made at his own expense.
2. Cooperation with officers so that no reasonable apprehension of difficulty in handling the prisoner exists so the test can be made consistent with safe custody.
3. Availability of facilities and personnel to make test at time and place requested which is reasonably accessible to the place of incarceration.
4. Refusal by officers to permit prisoner to communicate with an attorney or other person of his choice in an effort to have a requested test made.
The next question is whether or not the ruling announced here will be applied retrospectively or prospectively.
The constitutional rule announced in this case is new and in Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), the Supreme Court of the United States stated:
Thus the accepted rule today is that in appropriate cases the Court may in the interest of justice make the rule prospective. (381 U.S. at 628, 85 S.Ct. at 1737, 14 L.Ed.2d at 607, 608.)
The Court further stated that the Constitution neither prohibits nor requires retrospective effect. In Linkletter the court also stated: "A ruling which is purely prospective does not apply even to the parties before the court" and cites as authority England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), where the rule was applied prospectively.
In England, supra, the Supreme Court stated:
We now explicitly hold that if a party freely and without reservation submits his federal claims for decision by the state courts, litigates them there, and has them decided there, then  whether or not he seeks direct review of the state decision in this Court  he has elected to forego his right to return to the District Court. (375 U.S. at 419, 84 S.Ct. at 467, 11 L.Ed.2d at 447.)
After announcing the rule the court stated:
On the record in the instant case, the rule we announce today would call for affirmance of the District Court's judgment. But we are unwilling to apply the rule against these appellants. (375 U.S. at 422, 84 S.Ct. at 468, 11 L.Ed.2d at 449.)
In Adams v. Illinois, 405 U.S. 278, 92 S.Ct. 916, 31 L.Ed.2d 202, decided by the Supreme Court of the United States on March 6, 1972, the Court stated:
The criteria guiding resolution of the question of the retroactivity of new constitutional rules of criminal procedure "implicate (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199 (1967). We have given complete retroactive effect to the new rule, regardless *480 of good faith reliance by law enforcement authorities or the degree of impact on the administration of justice, where the "major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials... ." Williams v. United States, 401 U.S. 646, 653, 91 S.Ct. 1148, 1152, 28 L.Ed.2d 388 (1971). Examples are the right to counsel at trial, Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); on appeal, Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); or at some forms of arraignment, Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961). See generally Stovall v. Denno, supra, 388 U.S. at 297-298, 87 S.Ct. at 1970-1971; Williams v. United States, supra, 401 U.S. at 653 n. 6, 91 S.Ct. at 1152.
However, "the question whether a constitutional rule of criminal procedure does or does not enhance the reliability of the fact-finding process at trial is necessarily a matter of degree," Johnson v. New Jersey, 384 U.S. 719, 728-729, 86 S.Ct. 1772, 1778, 16 L.Ed.2d 882 (1966); it is a "question of probabilities." Id., at 729, 86 S.Ct. 1778. Thus, although the rule requiring the assistance of counsel at a lineup, United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), is "aimed at avoiding unfairness at the trial by enhancing the reliability of the fact-finding process in the area of identification evidence," we held that the probabilities of infecting the integrity of the truth-determining process by denial of counsel at the lineup were sufficiently less than the omission of counsel at the trial itself or on appeal that those probabilities "must in turn be weighed against the prior justified reliance upon the old standard and the impact of retroactivity upon the administration of justice." Stovall v. Denno, supra, 388 U.S. at 298, 87 S.Ct. at 1970. (Adams v. Illinois, 405 U.S. 278, 92 S.Ct. 916, 31 L.Ed.2d 202, Dec. March 6, 1972.)
The proof shows that the appellant in the instant case caused the arresting officer some trouble, and when asked why he did not take the appellant to the hospital and give him a blood test, the officer replied that he was having enough trouble to get him into the county jail, and he did not want to take any more chances of having to carry him to the hospital. There was sufficient justification shown by the record for the refusal of the officer to carry him to the hospital.
The arrest of the defendant was made about midnight and it is recognized by the Court that it might have been difficult, if not impossible, to have a test made at such an hour.
Appellant did not show at his trial that the requested blood test could have been made and this Court, in order to reverse his conviction, would be forced to speculate as to the availability of personnel and facilities at the time of his arrest and incarceration. Appellant should have presented proof of these facts at his trial, but instead of so doing, chose to present the question of his sobriety on the evidence shown in the record.
There was ample evidence for the jury to find appellant guilty and the state was under no obligation to obtain for him what he speculates might have been more scientific evidence of his sobriety.
This Court has carefully considered the criteria summarized in Adams, supra, and after weighing the prior justified reliance upon the old standard and the impact of retroactivity upon the administration of justice, we are of the opinion that the constitutional rule announced in this case should be prospective in its application. We do not think the authorities are to be faulted for not anticipating the rule herein announced because there has been no clear foreshadowing of this rule. The rule announced *481 will apply only to those persons arrested after the date of this decision.
We are of the opinion that the rule will enhance the reliability of the fact-finding process at trial and it is not limited to cases involving persons charged with driving while under the influence of intoxicating liquor. It shall extend to all cases where the time after arrest and detention is the controlling factor in the accuracy of chemical or other tests on the person of the accused, and where such tests will provide reliable scientific information as an aid in the search for truth.
For the reasons stated, this case is affirmed.
Affirmed.
RODGERS, P.J., and BRADY, PATTERSON and SMITH, JJ., concur.