# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-CT-01415-SCT

*JAISON O. HARNESS*

*v.*

*STATE OF MISSISSIPPI*

### ON MOTION FOR REHEARING
### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 06/18/2007 |
| TRIAL JUDGE: | HON. BOBBY BURT DELAUGHTER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | IMHOTEP ALKEBU-LAN |
| | JAISON O. HARNESS (PRO SE) |
| | VIRGINIA L. WATKINS |
| | WILLIAM R. LABARRE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LADONNA C. HOLLAND |
| DISTRICT ATTORNEY: | ROBERT SHULER SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 01/20/2011 |
| MOTION FOR REHEARING FILED: | 06/21/2010 |
| MANDATE ISSUED: | |

**EN BANC.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1.    The State's motion for rehearing is granted.  The previous opinions are withdrawn

and these opinions are substituted therefor.

¶2.    Jaison Harness was convicted of aggravated DUI and sentenced to twenty-five years

in prison, with ten years suspended and five years of supervised probation.  Harness appealed

his conviction, and the Court of Appeals affirmed.[1] This Court granted Harness's petition for writ of certiorari and, finding no error, we affirm his conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

¶3. On the evening of August 22, 2003, Jaison Harness and Clyde Hampton, traveling in separate vehicles, were involved in a head-on collision. Officer Natyyo Gray was one of the first officers on the scene. Officer Gray testified that he observed Hampton in his vehicle and that he appeared to be "lifeless." He observed Harness standing beside his vehicle. Harness told Officer Gray that he had just left a "get together," and that he had been drinking, but that he was not drunk. Officer Gray testified that he thought Harness's eyes appeared "a little glazed" and that Harness would "move further back" every time Officer Gray would take a step around the car. Harness eventually stated that he was hurting and felt a little dizzy, and he was taken to the hospital. Officer Gray observed an unopened bottle of brandy in the passenger floorboard of Harness's vehicle and several open beer cans in the driver's floorboard of Hampton's vehicle.

¶4. Officer Joseph Cotton, another officer at the scene, testified that Hampton and Harness were taken to separate hospitals, and that he went and retrieved blood samples from both men because alcohol was present at the scene of the accident. Hampton died early the next morning from his injuries.

---

[1] *Harness v. State*, 2009 WL 1383470 (Miss. Ct. App. May 19, 2009).

2

¶5.     The state crime laboratory received Harness's blood sample on October 7, 2003.[2]  The

first analysis of the sample was performed on October 16, 2003, resulting in blood-alcohol

readings of .1176 and .1234.[3]  But because these results were not within "plus or minus two

percent" – the range allowed by the lab's operating procedures – they were not reported to

the State, and a second test had to be conducted.  The second analysis of Harness's blood

sample was performed on October 23, 2003, resulting in blood-alcohol readings of .1175 and

.1170.  A report listing a blood-alcohol level of .11 was then sent to the Jackson Police

Department.  The report noted:

> This report represents the analytical results of the examinations performed on
> the items of evidence in this case . . . . Should additional material be required
> for court purposes, please contact the laboratory as soon as possible. *All
> samples submitted for toxicological examinations will be routinely disposed
> of six months after analyses are completed.* If you anticipate that this evidence
> will be needed, please contact the laboratory to arrange its return.

(Emphasis added.)

¶6.     On April 8, 2004, Harness was indicted for driving under the influence and causing

death in violation of Mississippi Code Sections 63-11-30(1) and 63-11-30(5).  On July 22,

2004, Harness received a copy of the crime lab report from the district attorney's office and

filed a motion for discovery, requesting, among other things, his blood sample for

independent testing.  When the State failed to produce the blood sample, Harness filed a

motion to compel on September 30, 2004, and a hearing on the motion was set for November

---

[2] The crime lab also received Hampton's blood sample on October 7, 2003.
Hampton's blood-sample analysis resulted in a blood alcohol reading of .03.

[3] Each sample is tested in duplicate as part of the crime lab's methodology.

3

5, 2004. But the crime lab had disposed of Harness's blood sample a week after he had filed his motion to compel.

¶7. Harness filed a motion to dismiss the indictment, arguing that the crime lab's destruction of his blood sample denied him the right to an independent test which might have disclosed exculpatory evidence. After a hearing, the trial judge denied the motion, reasoning that there was no evidence of bad faith by the State and that defense counsel also was made aware that the sample would be destroyed within six months when he received the report from the crime lab.

¶8. After a trial, the jury found Harness guilty of aggravated DUI, and the trial court sentenced Harness to twenty-five years in prison, with ten years suspended and five years of supervised probation. Harness appealed, arguing five issues:

> (1) that the trial court erred when it admitted the expert testimony of Officer Joseph Cotton, the State's accident reconstructionist; (2) that the trial court erred when it allowed a diagram drawn by Cotton to be admitted into evidence; (3) that the trial court erred in denying Harness's motion to dismiss the indictment;[4] (4) that the State failed to establish an adequate evidentiary foundation for the blood sample; and (5) that the trial court erred when it disallowed evidence of a release and settlement Harness received from Hampton's insurer, as well as evidence of a complaint filed against Harness alleging the negligence of a second, unknown individual.

The case was assigned to the Court of Appeals, which affirmed the trial court on all issues.[5]

---

[4] Harness also had filed a motion to suppress the results from the blood-sample analysis, and he argued on appeal that the trial court's denial of that motion was in error as well. But in that motion, Harness argued that the blood evidence should be suppressed because it was illegally seized by authorities. Harness does not reiterate that argument on appeal.

[5] *Harness v. State*, 2009 WL 1383470 (Miss. Ct. App. May 19, 2009).

¶9.     This Court granted Harness's petition for writ of certiorari, in which he argued the same five issues.  In our original opinion, we addressed issue three only – the trial court's denial of Harness's motion to dismiss – and reversed the Court of Appeals.  We held that the standard laid out by the United States Supreme Court in *California v. Trombetta*[6] was insufficient to determine whether a defendant had been deprived of his due-process rights in Mississippi.  We found that Harness was entitled to independent testing of his blood sample,[7] and that the State's failure to honor his timely request for the sample violated his due-process rights.

¶10.    The State filed a motion for rehearing, asking this Court to clarify whether this heightened due-process standard applied only in DUI cases, or in all cases involving destruction of evidence.  The State urged this Court to return to the *Trombetta* standard, as our statute allowing for independent testing of a blood sample provides no more protection to DUI defendants than that already provided to all defendants under Uniform Circuit and County Court Rule 9.04.[8]  After further review, we find errors of both law and fact, and we

---

[6] *California v. Trombetta*, 467 U.S. 479, 104 S. Ct. 2528, 81 L. Ed. 2d. 413 (1984).

[7] We relied on Mississippi Code Section § 63-11-13 (Rev. 2004), which states: The person tested may, at his own expense, have a physician, registered nurse, clinical laboratory technologist or clinical laboratory technician or any other qualified person of his choosing administer a test, approved by the state crime laboratory created pursuant to section 45-1-17, in addition to any other test, for the purpose of determining the amount of alcohol in his blood at the time alleged as shown by chemical analysis of his blood, breath or urine. The failure or inability to obtain an additional test by such arrested person shall not preclude the admissibility in evidence of the test taken at the direction of a law enforcement officer.

[8] Uniform Circuit and County Court Rule 9.04 states, in pertinent part:
A. [T]he prosecution must disclose to each defendant or to defendant's

5

withdraw our original opinion and substitute this opinion, affirming the trial court and the Court of Appeals. Pursuant to Mississippi Rule of Appellate Procedure 17(h), we limit our review on certiorari to Harness's third assignment of error.

**ANALYSIS**

¶11. "A defendant has a constitutionally protected privilege to request and obtain from the prosecution evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed."[9] In ***Trombetta***,[10] the United States Supreme Court established a test for determining whether a defendant's due-process rights have been violated in situations where physical evidence has been destroyed. There, several defendants filed motions to suppress the results of their Intoxilyzer breath tests because the arresting officers had failed to preserve the samples.[11]

¶12. In finding for the State, the Supreme Court held that "[w]hatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a *significant role in the suspect's defense*."[12] In order to "play a

---

attorney, and permit defendant or defendant's attorney to inspect, copy, test, and photograph upon written request and without the necessity of court order the following which is in the possession, custody or control of the State, the existence of which is known or by the exercise of due diligence may become known to the prosecution: (5) Any physical evidence and photographs relevant to the case or which may be offered in evidence . . . .

[9] ***Trombetta***, 467 U.S. at 485.

[10] ***Id.***

[11] ***Id.*** at 482-83.

[12] ***Id.*** at 488 (emphasis added).

6

significant role in the suspect's defense," the evidence "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."[13] The Court found that "the Due Process Clause of the Fourteenth Amendment does not require that law enforcement agencies preserve breath samples in order to introduce the results of breath-analysis tests at trial."[14]

¶13.    In *Arizona v. Youngblood*,[15] the United States Supreme Court explicitly[16] added a bad-faith factor to the *Trombetta* test: "We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." This Court has applied the three-factor standard established in *Trombetta* and *Youngblood* in several cases.[17]

¶14.    Here, Harness had a right to test the blood sample taken by the State. Uniform Circuit and County Court Rule 9.04 states, in pertinent part:

> [T]he prosecution must disclose to each defendant or to defendant's attorney, and *permit defendant or defendant's attorney to inspect, copy, test, and photograph* upon written request and without the necessity of court order the

---

[13] *Id.* at 489.

[14] *Id.* at 491.

[15] *Arizona v. Youngblood*, 488 U.S. 51, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988).

[16] The *Trombetta* Court had discussed the lack of bad faith by the State in destroying the breath samples, even though it did not mention it as the third factor to the test. *Trombetta*, 467 U.S. at 488.

[17] *See e.g.*, *McGrone v. State*, 798 So. 2d 519, 522-23 (Miss. 2001); *Taylor v. State*, 672 So. 2d 1246, 1271 (Miss. 1996); *Holland v. State*, 587 So. 2d 848, 869 (Miss. 1991); *Tolbert v. State*, 511 So. 2d 1368, 1372-73 (Miss. 1987).

following which is in the possession, custody or control of the State, the existence of which is known or by the exercise of due diligence may become known to the prosecution: (5) *Any physical evidence* and photographs relevant to the case or which may be offered in evidence . . .

(Emphasis added.) But now that the blood sample has been destroyed, Harness must show that it had exculpatory value which was apparent before it was destroyed, that he would be unable reasonably to obtain comparable evidence, and that the State acted in bad faith in order to prevail on his due-process claim. We find that he has not made the first showing – that the blood sample had exculpatory value before it was destroyed – and we therefore affirm the trial court's denial of his motion to dismiss the indictment.

¶15. As already discussed, the crime laboratory tested Harness's blood sample four times on two occasions. The first two tests resulted in blood-alcohol readings of .1176 and .1234. These results were not reported to the State because the results were outside the standard deviation set by the lab's internal operating procedures. A week later, the lab conducted two more tests which resulted in blood-alcohol readings of .1175 and .1170.

¶16. John Stevenson, the forensic scientist who tested Harness's blood, testified at length concerning the quality controls implemented by the lab to ensure accurate results, including control samples which the lab runs with each batch of tests. Stevenson also testified that, simply because the first tests had produced readings outside the standard deviation did not mean they were inaccurate. Specifically, Stevenson stated:

> The batch itself was good. The batch itself was run along with controls and other data. That doesn't mean that the batch wasn't good. That just means that this particular sample was outside the normal standard deviation, which is part of our process. Due to the type of sample we are running, could be blood, urine, or vitreous, that sample has some variances to it. So if it's

8

outside their range set up by the Mississippi Crime Laboratory then that sample is re-ran [sic].

Stevenson was subjected to cross examination, both at the hearing on the motion to dismiss and at trial.

¶17.    Thus, Harness's blood sample was tested four times; and, even giving him the benefit of the lowest result – .1170 – his blood-alcohol level was well over the legal limit.  As we stated in **Tolbert v. State**: "'the mere possibility the evidence might aid the defense does not satisfy the constitutional materiality standard.'"[18]  We find that Harness has failed to meet the first prong of the **Trombetta** test, as the blood sample did not "possess an exculpatory value that was apparent" before it was destroyed.[19]

¶18.    Because Harness has failed to prove the first prong of the **Trombetta** test, we find it unnecessary to discuss the remaining two prongs (i.e., that he would be unable reasonably to obtain comparable evidence, and that the State acted in bad faith).  But we feel compelled to address the dissent's allegation that "despite the trial judge's suggestions to the contrary, the crime lab personnel were under no compulsion to heed a request to preserve the evidence from anyone but the prosecutor." (Diss. Op. ¶32).  John Stevenson clearly testified that the lab would have preserved the sample if asked to do so by defense counsel:

> Q.  Just one question.  If you had received such a letter from a defense counsel asking that the sample be preserved, what steps under the policies and procedures of the Crime Lab would you have taken?

---

[18] **Tolbert v. State**, 511 So. 2d 1368, 1372 (Miss. 1987) (quoting **United States v. Binker**, 795 F.2d 1218, 1230 (5th Cir. 1986)).

[19] **Trombetta**, 467 U.S. at 489.

A. The process would have been then taking that item of evidence from the box itself where it was stored and taking it out and putting it in a hold box, an implied consent toxicology hold box within our tox freezer.

Q. So you would have then preserved it. Am I correct?

A. That is correct.

Q. Until further information from the submitting agency?

A. That's correct.

Q. It didn't – would it require – well, that's all. If you got a letter from a defense lawyer saying, please preserve the sample, you would have preserved it until further instruction from the submitting agency?

A. That is correct, sir.

Moreover, the dissent's lengthy discussion of the State's affirmative duty to "prosecute responsibly" – a basic principle not disputed by any Justice on this Court – is simply unnecessary for our analysis. Even if we were to agree that the State's actions were tantamount to bad faith, Harness still would not prevail, as he must meet *all three* prongs of the ***Trombetta*** test in order to have the blood sample suppressed. And as we discussed above, Harness is unable to show that the blood sample had exculpatory value that was apparent before it was destroyed. So we find that Harness's due-process rights were not violated when the trial court denied his motion to dismiss the indictment and allowed the State to introduce the results from the blood analysis at trial.

## CONCLUSION

¶19.    The trial court did not err when it denied Harness's motion to dismiss the indictment. Harness has failed to show that the blood sample had exculpatory value before it was destroyed, and we find no denial of due process in this case. We therefore affirm the decisions of the trial court and the Court of Appeals.

¶20.    **CONVICTION OF AGGRAVATED DRIVING UNDER THE INFLUENCE AND SENTENCE OF TWENTY-FIVE (25) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TEN (10) YEARS**

10

**SUSPENDED AND FIVE (5) YEARS OF SUPERVISED PROBATION WITH FIFTEEN (15) TO SERVE AND CREDIT GIVEN FOR TIME SERVED, AFFIRMED.**

**WALLER, C.J., CARLSON, P.J., RANDOLPH AND PIERCE, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, P.J., DICKINSON AND CHANDLER, JJ.**

**KITCHENS, JUSTICE, DISSENTING:**

¶21. On May 27, 2010, this Court reversed Harness's conviction with an eight-to-one vote. Because there were no "specific errors of law or fact" in the opinion which would warrant our granting rehearing under Rule 40 of the Mississippi Rules of Appellate Procedure, I respectfully dissent.

I.

¶22. The state crime laboratory received blood samples from both Harness and Hampton on October 7, 2003. The first analysis of Harness's blood sample was performed on October 16, 2003. That test produced results that were not within the reliability parameters established by the crime lab. A week after the initial testing of Harness's blood sample, the crime lab performed a second analysis on October 23, 2003.[20] No further test was performed on Harness's blood to check the accuracy of the second test, and the result was forwarded to the prosecutor, via the Jackson Police Department. The laboratory report put the prosecutor on notice that the blood samples would be destroyed within six months unless the crime lab was instructed to preserve the samples. The report contained the following language:

---

[20]The crime lab also analyzed Hampton's blood sample and reported a 0.03 percent ethyl alcohol content in his blood.

11

Should additional material be required for court purposes, please contact the laboratory as soon as possible. All samples submitted for toxicological examinations will be routinely disposed of six months after analyses are completed. If you anticipate that this evidence will be needed, please contact the laboratory to arrange its return.

¶23. On April 8, 2004, Harness was indicted for aggravated DUI. On July 22, 2004, Harness received a copy of the crime lab report from the district attorney's office, and that same day, Harness filed a motion for discovery, requesting, *inter alia*, the blood sample used in the blood-alcohol analysis for independent testing. The district attorney was provided a copy of this motion. When the State failed to produce the blood sample, Harness filed a motion to compel on September 30, 2004, again copying the district attorney's office. A hearing was set for November 8, 2004. Shortly before the hearing, on October 22, 2004, an investigator from the district attorney's office contacted the crime lab about the status of the blood sample but was informed that the lab had destroyed the sample just two weeks earlier, on October 7, 2004, a week after the defendant's motion to compel had been filed and served on the district attorney.

¶24. Harness moved to suppress the results of the blood analysis. At the hearing on the motion, John Stevenson, a forensic scientist with the state crime lab, testified that, prior to the October 22, 2004, call from the district attorney's office, neither the State nor the defense had contacted the lab about preserving the evidence. Stevenson testified that, although a defendant could request preservation of evidence, only the State had the authority to order that the sample be preserved.

¶25. The trial judge overruled the motion to suppress, reasoning that the destruction of the blood sample was not done in bad faith, as such samples are routinely destroyed within six

12

months to a year. Furthermore, although it was undisputed that the defendant could not have compelled the crime lab to preserve the evidence, the trial judge found it noteworthy that the defense had failed to contact the crime lab directly.

II.

¶26.   Due process of law is a fundamental right found in both the United States Constitution and the Mississippi Constitution. U.S. Const. amend. XIV; Miss. Const. art. 3, §14. The Court of Appeals, and a majority of this Court on rehearing, relied on the rule set forth in *California v. Trombetta*, 467 U.S. 479, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984), to hold that Harness was not deprived of due process after the State failed to preserve Harness's blood sample, allowing it to be destroyed. In *Trombetta*, the United States Supreme Court held that when preservation of evidence is at issue, due process of law is denied only where the destroyed evidence was expected to play a significant role in the defense. *Id.*, 467 U.S. at 488-90. The Supreme Court noted that evidence plays a significant role in the defense only where (1) the evidence possessed exculpatory value prior to its destruction, and (2) the evidence was of such a nature that the defendant could not have used other comparable evidence to mount a defense. *Id. Arizona v. Youngblood*, 488 U.S. 51, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988), added a third factor: the defendant must also demonstrate that the State acted in bad faith in failing to preserve the evidence in question. This Court has applied this three-pronged federal standard in several cases. *See e.g., McGrone v. State*, 798 So. 2d 519, 522-23  (Miss. 2001)*; Banks v. State*, 725 So. 2d 711 (Miss. 1997); *Taylor v. State*, 672 So. 2d 1246 (Miss. 1996); *Holland v. State*, 587 So. 2d 848, 869 (Miss. 1991).

13

¶27. The Court of Appeals found the first prong dispositive, reasoning that because the lowest test result of Harness's blood-alcohol level was 0.1170%, well over the legal limit, the blood sample lacked exculpatory value. This logic presupposes that this result was accurate, notwithstanding the state crime lab's determination that its first attempt to analyze the evidence had produced a questionable result, based on that facility's self-imposed reliability criteria.

¶28. The Court of Appeals also noted that the defense attorney represented that he believed the destruction of the blood sample was not intentional. However, we need not address whether the Court of Appeals was correct in its interpretation of the test found in *Tolbert v. State*, 511 So. 2d 1368 (Miss. 1987), because the circumstances surrounding the instant case present additional due process concerns that cannot fully be addressed by the application of the federal standard.

¶29. The preservation of evidence is especially important when the evidence in question is a blood sample taken from a person suspected of driving under the influence. In such cases, a defendant in Mississippi's state courts has a statutory right independently to test the sample for blood-alcohol content. Miss. Code Ann. § 63-11-13 (Rev. 2004).[21] This statutory

---

[21]Mississippi's implied consent law contains the following provision:

> The person tested may, at his own expense, have a physician, registered nurse, clinical laboratory technologist or clinical laboratory technician or any other qualified person of his choosing administer a test, approved by the state crime laboratory created pursuant to section 45-1-17, in addition to any other test, for the purpose of determining the amount of alcohol in his blood at the time alleged as shown by chemical analysis of his blood, breath or urine. The failure or inability to obtain an additional test by such arrested person shall not preclude the admissibility in evidence of the test taken at the direction of a law

14

right is firmly rooted in due process concerns, to ensure the accused's ability to mount a defense and thoroughly confront the evidence against him. As our case law demonstrates, Mississippi law affords a greater level of due process protection than the standards provided in *Trombetta* and its progeny.

¶30.    In *Scarborough v. State*, 261 So. 2d 475 (Miss. 1972), we examined this statutory provision for the first time and held that an unreasonable denial of a defendant's request for a blood test amounts to a denial of due process of law. Following his arrest for driving under the influence, Scarborough was held incommunicado, and his requests for a blood test were denied. *Id.* at 477. During court proceedings, it was revealed that this was standard police procedure. *Id.* The Court noted that:

> This practice will become particularly acute when the Mississippi Implied Consent Act goes into effect April 1, 1972. The Legislature included within the act a provision giving an accused the right to an additional test conducted by anyone of his choice who is qualified. If such a practice is allowed to continue, it would in fact nullify the statute and frustrate the intention of the Legislature.

*Id.* at 478 (internal citation omitted). As in *Scarborough*, the destruction of a blood sample after the State has been notified of the defendant's desire to conduct an independent test would "nullify the statute and frustrate the intention of the Legislature."

---

enforcement officer.

Miss. Code Ann. § 63-11-13 (Rev. 2004). Although the final sentence provides that a violation of this right will not preclude the admission of the State's test results, we repeatedly have held that rules governing the admissibility of evidence are strictly within the province of the courts and are not a legislative matter. *Deeds v. State*, 27 So. 3d 1135, 1141 (Miss. 2009) (citing *Whitehurst v. State*, 540 So. 2d 1319, 1323 (Miss. 1989); *Hall v. State,* 539 So. 2d 1338 (Miss. 1989); M.R.E. 1103).

15

¶31.   More importantly, however, the ***Scarborough*** decision held that violation of the statute necessarily carried with it the potential violation of a defendant's constitutional right to due process of law:

> We do not think the rights of the respondent are to be ascertained from an examination of the statute. Rather they are determined by the constitutional guarantee that one may be deprived of his liberty only by due process of law. Due process of law is another name for governmental fair play.  Fair play requires, for example, that a respondent in a criminal case must be given a reasonable opportunity to employ and consult with counsel before trial.  We think that for the same basic reasons *a respondent charged with operation of a motor vehicle while under the influence of intoxicating liquor is entitled to a reasonable opportunity to attempt to procure the seasonable taking of a blood sample for test purposes.*

***Id.***  (quoting ***State v. Munsey***, 127 A.2d 79 (Me. 1956) (internal citations and quotations omitted) (emphasis added)).  Thus, the unreasonable denial of a defendant's request for a blood test pursuant to Mississippi Code Section 63-11-13 amounts to a denial of due process of law.

¶32.   Likewise, the unreasonable denial of a defendant's request for an *independent* blood test under the same statutory provision discussed in ***Scarborough*** also will amount to a denial of due process of law.  Miss. Code Ann. § 63-11-13 (Rev. 2004).  In Scarborough's case, the defendant's request was reasonably denied because he was uncooperative with the arresting officer and failed to show that a blood sample could have been obtained. ***Scarborough***, 261 So. 2d at 480.  However, the circumstances in the present case are quite different, and, unlike Scarborough, Harness was unreasonably denied his right to an independent blood test.  Harness complied with all of the procedures required to protect his right to an independent test.  He timely filed a motion for discovery of the blood sample on

16

July 22, 2004, and when the State failed to respond, he followed with a motion to compel on September 30, 2004. Even though the State was on notice from Harness's motions that he desired to exercise his right to independent testing, the district attorney's office did not communicate with the crime lab until October 22, 2004, fifteen days after the blood had been destroyed. The prosecution's call to the crime lab was made a full *three months* after the defendant had notified the district attorney, by written motion, that he desired a blood sample for independent testing. The State was fully aware a year earlier from the crime lab's report that the blood would be disposed of as early as six months thence, and despite the trial judge's suggestions to the contrary, the crime lab personnel were under no compulsion to heed a request to preserve the evidence from anyone but the prosecutor. That the crime laboratory's first round of testing was not within that lab's own reliability parameters renders the State's disregard of Harness's timely request even more disturbing.

¶33. While these facts, taken together, may not demonstrate a specific intent to destroy the blood sample, the district attorney's indifference to the defendant's efforts to obtain independent testing, which is both a statutory and constitutional right, is tantamount to a willful disregard of the affirmative duty to preserve evidence that "might be expected to play a significant role in the suspect's defense." ***Tolbert***, 511 So. 2d at 1372 (citing ***Trombetta***, 467 U.S. at 489). Due process of law demands that the State disclose to criminal defendants any and all evidence relevant to guilt or to punishment. ***Brady v. Maryland***, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). Likewise, our uniform rules require that the prosecution "disclose to each defendant or to defendant's attorney, and permit defendant or defendant's attorney to inspect, copy, *test*, and photograph upon written request . . . any

17

physical evidence . . . relevant to the case or which may be offered in evidence." URCCC 9.04(A)(5) (emphasis added). Further, the State has an affirmative duty to prosecute responsibly, and to this point, Mississippi Rule of Professional Conduct 3.8(d) makes clear that in all criminal cases the prosecutor "shall make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense." A prosecutor is not merely an advocate, but a "minister of justice." Miss. R. Prof'l. Conduct 3.8 cmt. Accordingly, a prosecutor's duty requires diligence to ensure a defendant is afforded procedural justice and that guilt is decided upon the basis of sufficient evidence. *Id*. Though the prosecutor in this case may not have set out deliberately to deprive the accused of his right to independent testing, his error in failing to undertake steps to preserve the defendant's right to such testing produced the same result as if he had purposely caused the evidence to be destroyed without the defendant's being allowed to test it.

¶34.    Finally, we note that, even before the enactment of the implied consent law, this Court recognized that, in certain cases, the accused is constitutionally entitled independently to inspect and analyze material, tangible evidence. In *Jackson v. State*, 243 So. 2d 396, 397 (Miss. 1971), the defendant was convicted of possession of marihuana-based material seized from his car, which the state chemist determined to be marihuana. *Id.* The State refused to give the defendant a sample of the seized substance in order that he might obtain independent testing at his own expense, and the trial court overruled the defendant's motion to compel production of a sample. *Id.* This Court reversed, holding that the denial of the defendant's request for independent testing amounted to a denial of due process. In reaching this

18

decision, the Court noted that "[t]here is no good reason why the defendant in a civil case should be entitled to more liberal right to tangible evidence in the possession of his adversary . . . than is a person under a serious criminal charge." *Id.* at 398 (quoting *Armstrong v. State*, 214 So. 2d 589, 596 (Miss. 1968)). Although the ruling was "limited to the alleged possession or sale of a prohibited substance where the outcome of the case is dependent upon its identification as contraband," the same reasoning applies in DUI cases where the outcome of the case is dependent upon the amount of alcohol in the accused's blood:

> The guilt or innocence, prison sentence or acquittal, of the defendant depends entirely upon the identification of the contents of the boxes as marijuana. This substance was relevant, material, competent and, in fact, necessary evidence to defendant's conviction. Under this circumstance we are of the opinion that *due process of law requires, upon the court's attention being directed thereto by motion, that the analysis of the substance not be left totally within the province of the state chemist.*

*Id.* (emphasis added).

¶35. As in *Jackson*, the State's inaction denied Harness an opportunity to test the key piece of evidence in this case. This evidence was at all times under the complete control of the State, and the State was fully aware of its importance as well as the defendant's desire to obtain an independent analysis. In our adversarial system, it is fundamentally unfair to allow only one party access to the evidence. No scientific test or expert is infallible, a point underscored by the crime lab's failure to obtain an acceptable result from the first round of testing, and the opposing party always should be given a reasonable opportunity to scrutinize his adversary's case. This is especially important in criminal cases where liberty is at stake. The State's failure to respond to Harness's request prevented him from fully defending himself against the crime with which he was charged.

19

¶36.   Harness's conviction should be reversed and his case remanded for a new trial. If that were done and the State's blood analysis were deemed admissible by the trial court, the jury should be given a negative-inference instruction, on the following order:

> The Court instructs the jury that if you find from the evidence that the State has failed to preserve any physical evidence whose contents or quality are in question in this case, and which the defendant could have had tested or analyzed by a qualified expert of his choosing, but for the State's having failed to cause that evidence to be preserved for independent, expert testing or analysis by the defense, then you may infer that such testing or analysis would have been favorable to the defendant and unfavorable to the State. However, if you choose to make the negative inference against the State, this would not necessarily result in the defendant's acquittal. If other evidence on this issue has been presented to you which either establishes the fact or resolves the issue to which the missing evidence is relevant, then you must weigh that evidence along with all other evidence. If, after considering all of the evidence, including the negative inference, you unanimously believe that the defendant has been proven guilty, beyond a reasonable doubt, then your verdict shall be, "We, the jury, find the defendant guilty."

III.

¶37.   The standard announced by the United States Supreme Court in *Trombetta* is not sufficient to protect the due process rights accorded under Mississippi law. *Trombetta*, 467 U.S. 488-90. In DUI cases, the accused is entitled to independent testing of an available blood sample, at his own expense, provided a timely and proper request is made. Because the State failed to honor Harness's timely and proper request and allowed the key evidence against him to be destroyed, he was unreasonably denied due process of law. Therefore, I would reverse his conviction and remand the case for a new trial, and I respectfully dissent from today's majority decision to the contrary.

**GRAVES, P.J., DICKINSON AND CHANDLER, JJ., JOIN THIS OPINION.**

20