KITCHENS, Justice,
Dissenting:
¶ 21. On May 27, 2010, this Court reversed Harness’s conviction with an eight-to-one vote. Because there were no “specific errors of law or fact” in the opinion which would warrant our granting rehearing under Rule 40 of the Mississippi Rules of Appellate Procedure, I respectfully dissent.
I.
¶ 22. The state crime laboratory received blood samples from both Harness and Hampton on October 7, 2003. The first analysis of Harness’s blood sample was performed on October 16, 2008. That test produced results that were not within the reliability parameters established by the crime lab. A week after the initial testing of Harness’s blood sample, the crime lab performed a second analysis on October 23, 2003.[20] No further test was performed on Harness’s blood to check the accuracy of the second test, and the result was forwarded to the prosecutor, via the Jackson Police Department. The laboratory report put the prosecutor on notice that the blood samples would be destroyed within six months unless the crime lab was instructed to preserve the samples. The report contained the following language:
Should additional material be required for court purposes, please contact the laboratory as soon as possible. All samples submitted for toxicological examinations will be routinely disposed of six months after analyses are completed. If you anticipate that this evidence will be needed, please contact the laboratory to arrange its return.
¶ 23. On April 8, 2004, Harness was indicted for aggravated DUI. On July 22, 2004, Harness received a copy of the crime lab report from the district attorney’s office, and that same day, Harness filed a motion for discovery, requesting, inter alia, the blood sample used in the blood-alcohol analysis for independent testing. The district attorney was provided a copy of this motion. When the State failed to produce the blood sample, Harness filed a motion to compel on September 30, 2004, again copying the district attorney’s office. A hearing was set for November 8, 2004. Shortly before the hearing, on October 22, 2004, an investigator from the district attorney’s office contacted the crime lab about the status of the blood sample but was informed that the lab had destroyed the sample just two weeks earlier, on October 7, 2004, a week after the defendant’s motion to compel had been filed and served on the district attorney.
¶24. Harness moved to suppress the results of the blood analysis. At the hearing on the motion, John Stevenson, a forensic scientist with the state crime lab, testified that, prior to the October 22, 2004, call from the district attorney’s office, neither the State nor the defense had contacted the lab about preserving the evidence. Stevenson testified that, although a defendant could request preservation of evidence, only the State had the authority to order that the sample be preserved.
¶ 25. The trial judge overruled the motion to suppress, reasoning that the destruction of the blood sample was not done *8 in bad faith, as such samples are routinely destroyed within six months to a year. Furthermore, although it was undisputed that the defendant could not have compelled the crime lab to preserve the evidence, the trial judge found it noteworthy that the defense had failed to contact the crime lab directly.
II.
¶ 26. Due process of law is a fundamental right found in both the United States Constitution and the Mississippi Constitution. U.S. Const, amend. XIV; Miss. Const, art. 3, § 14. The Court of Appeals, and a majority of this Court on rehearing, relied on the rule set forth in California v. Trombetta, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), to hold that Harness was not deprived of due process after the State failed to preserve Harness’s blood sample, allowing it to be destroyed. In Trombetta, the United States Supreme Court held that when preservation of evidence is at issue, due process of law is denied only where the destroyed evidence was expected to play a significant role in the defense. Id., 467 U.S. at 488-90, 104 S.Ct. 2528. The Supreme Court noted that evidence plays a significant role in the defense only where (1) the evidence possessed exculpatory value prior to its destruction, and (2) the evidence was of such a nature that the defendant could not have used other comparable evidence to mount a defense. Id. Arizona v. Youngblood, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), added a third factor: the defendant must also demonstrate that the State acted in bad faith in failing to preserve the evidence in question. This Court has applied this three-pronged federal standard in several cases. See e.g., State v. McGrone, 798 So.2d 519, 522-23 (Miss.2001); Banks v. State, 725 So.2d 711 (Miss.1997); Taylor v. State, 672 So.2d 1246 (Miss.1996); Holland v. State, 587 So.2d 848, 869 (Miss.1991).
¶ 27. The Court of Appeals found the first prong dispositive, reasoning that because the lowest test result of Harness’s blood-alcohol level was 0.1170%, well over the legal limit, the blood sample lacked exculpatory value. This logic presupposes that this result was accurate, notwithstanding the state crime lab’s determination that its first attempt to analyze the evidence had produced a questionable result, based on that facility’s self-imposed reliability criteria.
¶ 28. The Court of Appeals also noted that the defense attorney represented that he believed the destruction of the blood sample was not intentional. However, we need not address whether the Court of Appeals was correct in its interpretation of the test found in Tolbert v. State, 511 So.2d 1368 (Miss.1987), because the circumstances surrounding the instant case present additional due process concerns that cannot fully be addressed by the application of the federal standard.
¶ 29. The preservation of evidence is especially important when the evidence in question is a blood sample taken from a person suspected of driving under the influence. In such cases, a defendant in Mississippi’s state courts has a statutory right independently to test the sample for blood-alcohol content. Miss.Code Ann. § 63-11-13 (Rev.2004).[21] This statutory *9 right is firmly rooted in due process concerns, to ensure the accused’s ability to mount a defense and thoroughly confront the evidence against him. As our case law demonstrates, Mississippi law affords a greater level of due process protection than the standards provided in Trombetta and its progeny.
¶ 30. In Scarborough v. State, 261 So.2d 475 (Miss.1972), we examined this statutory provision for the first time and held that an unreasonable denial of a defendant’s request for a blood test amounts to a denial of due process of law. Following his arrest for driving under the influence, Scarborough was held incommunicado, and his requests for a blood test were denied. Id. at 477. During court proceedings, it was revealed that this was standard police procedure. Id. The Court noted that:
This practice will become particularly acute when the Mississippi Implied Consent Act goes into effect April 1, 1972. The Legislature included within the act a provision giving an accused the right to an additional test conducted by anyone of his choice who is qualified. If such a practice is allowed to continue, it would in fact nullify the statute and frustrate the intention of the Legislature.
Id. at 478 (internal citation omitted). As in Scarborough, the destruction of a blood sample after the State has been notified of the defendant’s desire to conduct an independent test would “nullify the statute and frustrate the intention of the Legislature.”
¶ 81. More importantly, however, the Scarborough decision held that violation of the statute necessarily carried with it the potential violation of a defendant’s constitutional right to due process of law:
We do not think the rights of the respondent are to be ascertained from an examination of the statute. Rather they are determined by the constitutional guarantee that one may be deprived of his liberty only by due process of law. Due process of law is another name for governmental fair play. Fair play requires, for example, that a respondent in a criminal case must be given a reasonable opportunity to employ and consult with counsel before trial. We think that for the same basic reasons a respondent charged with operation of a motor vehicle while under the influence of intoxicating liquor is entitled to a reasonable opportunity to attempt to procure the seasonable taking of a blood sample for test purposes.
Id. (quoting State v. Munsey, 152 Me. 198, 127 A.2d 79 (1956) (internal citations and quotations omitted) (emphasis added)). Thus, the unreasonable denial of a defendant’s request for a blood test pursuant to Mississippi Code Section 63-11-13 amounts to a denial of due process of law.
¶ 32. Likewise, the unreasonable denial of a defendant’s request for an independent blood test under the same statutory provision discussed in Scarborough also will amount to a denial of due process of law. Miss.Code Ann. § 63-11-13 (Rev. 2004). In Scarborough’s case, the defen *10 dant’s request was reasonably denied because he was uncooperative with the arresting officer and failed to show that a blood sample could have been obtained. Scarborough, 261 So.2d at 480. However, the circumstances in the present case are quite different, and, unlike Scarborough, Harness was unreasonably denied his right to an independent blood test. Harness complied with all of the procedures required to protect his right to an independent test. He timely filed a motion for discovery of the blood sample on July 22, 2004, and when the State failed to respond, he followed with a motion to compel on September 30, 2004. Even though the State was on notice from Harness’s motions that he desired to exercise his right to independent testing, the district attorney’s office did not communicate with the crime lab until October 22, 2004, fifteen days after the blood had been destroyed. The prosecution’s call to the crime lab was made a full three months after the defendant had notified the district attorney, by written motion, that he desired a blood sample for independent testing. The State was fully aware a year earlier from the crime lab’s report that the blood would be disposed of as early as six months thence, and despite the trial judge’s suggestions to the contrary, the crime lab personnel were under no compulsion to heed a request to preserve the evidence from anyone but the prosecutor. That the crime laboratory’s first round of testing was not within that lab’s own reliability parameters renders the State’s disregard of Harness’s timely request even more disturbing.
¶ 33. While these facts, taken together, may not demonstrate a specific intent to destroy the blood sample, the district attorney’s indifference to the defendant’s efforts to obtain independent testing, which is both a statutory and constitutional right, is tantamount to a willful disregard of the affirmative duty to preserve evidence that “might be expected to play a significant role in the suspect’s defense.” Tolbert, 511 So.2d at 1372 (citing Trombetta, 467 U.S. at 489, 104 S.Ct. 2528). Due process of law demands that the State disclose to criminal defendants any and all evidence relevant to guilt or to punishment. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Likewise, our uniform rules require that the prosecution “disclose to each defendant or to defendant’s attorney, and permit defendant or defendant’s attorney to inspect, copy, test, and photograph upon written request ... any physical evidence ... relevant to the case or which may be offered in evidence.” URCCC 9.04(A)(5) (emphasis added). Further, the State has an affirmative duty to prosecute responsibly, and to this point, Mississippi Rule of Professional Conduct 3.8(d) makes clear that in all criminal cases the prosecutor “shall make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense.” A prosecutor is not merely an advocate, but a “minister of justice.” Miss. R. Profl. Conduct 3.8 cmt. Accordingly, a prosecutor’s duty requires diligence to ensure a defendant is afforded procedural justice and that guilt is decided upon the basis of sufficient evidence. Id. Though the prosecutor in this case may not have set out deliberately to deprive the accused of his right to independent testing, his error in failing to undertake steps to preserve the defendant’s right to such testing produced the same result as if he had purposely caused the evidence to be destroyed without the defendant’s being allowed to test it.
¶ 34. Finally, we note that, even before the enactment of the implied consent law, this Court recognized that, in certain cases, the accused is constitutionally entitled independently to inspect and analyze *11 material, tangible evidence. In Jackson v. State, 243 So.2d 896, 397 (Miss.1971), the defendant was convicted of possession of marihuana-based material seized from his car, which the state chemist determined to be marihuana. Id. The State refused to give the defendant a sample of the seized substance in order that he might obtain independent testing at his own expense, and the trial court overruled the defendant’s motion to compel production of a sample. Id. This Court reversed, holding that the denial of the defendant’s request for independent testing amounted to a denial of due process. In reaching this decision, the Court noted that “[t]here is no good reason why the defendant in a civil case should be entitled to more liberal right to tangible evidence in the possession of his adversary ... than is a person under a serious criminal charge.” Id. at 398 (quoting Armstrong v. State, 214 So.2d 589, 596 (Miss.1968)). Although the ruling was “limited to the alleged possession or sale of a prohibited substance where the outcome of the case is dependent upon its identification as contraband,” the same reasoning applies in DUI cases where the outcome of the case is dependent upon the amount of alcohol in the accused’s blood:
The guilt or innocence, prison sentence or acquittal, of the defendant depends entirely upon the identification of the contents of the boxes as marijuana. This substance was relevant, material, competent and, in fact, necessary evidence to defendant’s conviction. Under this circumstance we are of the opinion that due process of law requires, upon the court’s attention being directed thereto by motion, that the analysis of the substance not be left totally within the province of the state chemist.
Id. (emphasis added).
¶ 35. As in Jackson, the State’s inaction denied Harness an opportunity to test the key piece of evidence in this case. This evidence was at all times under the complete control of the State, and the State was fully aware of its importance as well as the defendant’s desire to obtain an independent analysis. In our adversarial system, it is fundamentally unfair to allow only one party access to the evidence. No scientific test or expert is infallible, a point underscored by the crime lab’s failure to obtain an acceptable result from the first round of testing, and the opposing party always should be given a reasonable opportunity to scrutinize his adversary’s case. This is especially important in criminal cases where liberty is at stake. The State’s failure to respond to Harness’s request prevented him from fully defending himself against the crime with which he was charged.
¶ 36. Harness’s conviction should be reversed and his case remanded for a new trial. If that were done and the State’s blood analysis were deemed admissible by the trial court, the jury should be given a negative-inference instruction, on the following order:
The Court instructs the jury that, if you find from the evidence that the State has failed to preserve any physical evidence whose contents or quality are in question in this case, and which the defendant could have had tested or analyzed by a qualified expert of his choosing, but for the State’s having failed to cause that evidence to be preserved for independent, expert testing or analysis by the defense, then you may infer that such testing or analysis would have been favorable to the defendant and unfavorable to the State. However, if you choose to make the negative inference against the State, this would not necessarily result in the defendant’s acquittal. If other evidence on this issue has been presented to you which either establishes *12 the fact or resolves the issue to which the missing evidence is relevant, then you must weigh that evidence along with all other evidence. If, after considering all of the evidence, including the negative inference, you unanimously believe that the defendant has been proven guilty, beyond a reasonable doubt, then your verdict shall be, “We, the jury, find the defendant guilty.”
III.
¶ 37. The standard announced by the United States Supreme Court in Trombet-ta is not sufficient to protect the due process rights accorded under Mississippi law. Trombetta, 467 U.S. at 488-90, 104 S.Ct. 2528. In DUI cases, the accused is entitled to independent testing of an available blood sample, at his own expense, provided a timely and proper request is made. Because the State failed to honor Harness’s timely and proper request and allowed the key evidence against him to be destroyed, he was unreasonably denied due process of law. Therefore, I would reverse his conviction and remand the case for a new trial, and I respectfully dissent from today’s majority decision to the contrary.
GRAVES, P.J., DICKINSON AND CHANDLER, JJ., JOIN THIS OPINION.

. The crime lab also analyzed Hampton's blood sample and reported a 0.03 percent ethyl alcohol content in his blood.

. Mississippi’s implied consent law contains the following provision:
The person tested may, at his own expense, have a physician, registered nurse, clinical laboratory technologist or clinical laboratory technician or any other qualified person of his choosing administer a test, approved by the state crime laboratory created pursuant to section 45-1-17, in addition to any other test, for the purpose of determining the amount of alcohol in his blood at the time alleged as shown by chemical analysis *9 of his blood, breath or urine. The failure or inability to obtain an additional test by such arrested person shall not preclude the admissibility in evidence of the test taken at the direction of a law enforcement officer.
Miss.Code Ann. § 63-11-13 (Rev.2004). Although the final sentence provides that a violation of this right will not preclude the admission of the State's test results, we repeatedly have held that rules governing the admissibility of evidence are strictly within the province of the courts and are not a legislative matter. Deeds v. State, 27 So.3d 1135, 1141 (Miss.2009) (citing Whitehurst v. State, 540 So.2d 1319, 1323 (Miss.1989); Hall v. State, 539 So.2d 1338 (Miss.1989); M.R.E. 1103).